Nicole A. **MARRIOTT**, By and Through Her Next Friend, Jacqueline **MARRIOTT**, Appellee,

v.

Gary **SMITH**, Sheriff of Morgan County, Missouri, Appellant,

Lacey Bradhurst, Max Middleton, Warren Anderson,

Joann Rumbo, Appellant,

Terry Prewitt,

Richard Hanrahan, Appellant.

No. 90–1879.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1990.

Decided May 1, 1991.

Rehearing and Rehearing En Banc Denied June 17, 1991.

Robert L. Hawkins, III, Jefferson City, Mo., for appellant.

Mark A. Ludwig, Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

This case treats the narrow question of whether the prison visitor exception to the fourth amendment's search warrant requirement applies to the search of a person who has already finished her visit to the jail and is no longer in a position to smuggle contraband into the jail. The district court[1] ruled that the exception does not apply to such a person and therefore entered partial summary judgment for plaintiff Nicole Marriott on her 42 U.S.C. § 1983 (1988) claims against three state law enforcement officials for violation of her fourth amendment rights. They appeal, and we affirm.

In March 1989, Nicole Marriott, then fifteen years old, regularly visited her brother, Robert, at the Morgan County, Missouri jail, where he was an inmate. On March 15, 1989, an inmate, Gerald Antoine, told the jailer, defendant Rick Hanrahan, that some of the younger inmates had been smoking marijuana in the jail and that Robert Marriott had been getting small amounts of marijuana from his sister, Nicole. Hanrahan was familiar with Nicole from her earlier visits. He had a microphone placed near the visiting area and surreptitiously taped the conversation between Nicole and Robert on her next visit. Although there is some dispute about what can actually be heard on the tape (Hanrahan admitted that in some places the tape was "incredibly bad"), Hanrahan stated that he understood Nicole to say she had been "smoking" that afternoon and was "so fucked up" she could hardly stand. He also said Nicole apologized to Robert for not bringing him his "stuff" because she had "smoked all of it." Hanrahan stated: "At this point Nicole's answer was extremely difficult to discern, however this reporting officer agrees with other depart-

---

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

ment personnel that Nicole referred to their next visit and bringing 'it' then."

During her next visit, on March 21, 1989, an officer was posted to watch Nicole and Robert with binoculars to see if she passed anything to him. He did not see them pass anything. At the close of the visiting period, Hanrahan stopped the visit. Defendant Joann Rumbo detained Nicole in a private room, while Hanrahan took Robert away and searched him, without finding anything. Rumbo then sought and received permission from defendant Sheriff Gary Smith to search Nicole, subject to the permission of the juvenile officer. Next, she phoned the juvenile officer, who said that "if we suspected someone carrying in drugs, we didn't need her permission" to search the person. Hanrahan instructed Rumbo to search Nicole. No one obtained a search warrant. Defendant Rumbo then returned to Nicole, asked her to strip to her underwear, and searched her, which included feeling underneath Nicole's brassiere. Rumbo found nothing and Nicole was released.

Nicole sued Hanrahan, Rumbo, Smith, Morgan County and its commissioners, and a deputy sheriff for violation of section 1983, claiming violation of her fourth amendment right to be free of unreasonable searches, and for related state law torts. The parties made cross-motions for summary judgment. The district court dismissed the county and its commissioners and the deputy sheriff, but entered summary judgment for Nicole Marriott against Hanrahan, Smith and Rumbo on the issue of liability for the section 1983 violation and for false arrest. *Marriott v. Smith,* No. 89–4331–CV–C–5 (May 23, 1990 W.D. Mo.).

The district court reasoned that Nicole could not be searched without a warrant, unless an exception to the warrant requirement applied to her case. Slip op. at 7. The only exception defendants argued was applicable was the prison visitor exception set out in *Hunter v. Auger,* 672 F.2d 668, 674 (8th Cir.1982).[2] The court held that the *Hunter* exception did not apply to Nicole Marriott's case, because *Hunter* was based on the State's interest in preventing visitors from bringing contraband into the prison. Slip op. at 5–6. In this case, the district court said, " '[P]reservation of security and order within the prison,' was left to the side in defendants' criminal investigation of plaintiff." Slip op. at 6 (quoting *Hunter,* 672 F.2d at 674). The district court held that the three remaining defendants should have known their actions violated Nicole Marriott's clearly established right not to have her person searched without a warrant, and therefore denied their qualified immunity defense. *Id.* at 9–10.

■ On appeal, the parties agree that there was no search warrant, and that therefore the search could only have been proper if an exception to the search warrant requirement applied and if the search was proper under that exception. Smith, Hanrahan, and Rumbo argue that the *Hunter* prison visitor exception applied to the search, or, that if we should hold that it did not apply, that this is a new development in the law and that they thus should be protected by qualified immunity. The relevant facts are not in dispute—indeed, are taken from the defendants' depositions.[3] Thus, the issues before us are whether the prison visitor exception applies or could reasonably be thought to apply. These issues are questions of law, which may be decided on summary judgment. *See Duran v. Aguilar,* 904 F.2d 1372, 1377

2. Under *Hunter v. Auger* visitors to penal institutions may be subjected to strip-searches if there are "reasonable grounds ... to believe that a particular visitor will attempt to smuggle contraband" into the prison. 672 F.2d at 675. This is known as the "reasonable suspicion" test.

3. There are disputed facts in this case that would be relevant in deciding whether there was "reasonable suspicion" under the *Hunter v. Auger* test. For instance, there is some question

about what could be understood on the tape of Nicole and Robert's conversation. Since we decide the *Hunter* test is altogether inapplicable on the facts of this case, we need not consider factual issues relevant in applying this test. Disputed facts having no bearing on determinative legal issues do not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

(9th Cir.1990) (granting summary judgment to plaintiffs in section 1983 claim based on violation of fourth amendment right, since there was no dispute that arrest occurred and court held as a matter of law that there was no theory under which arrest was justified). Entry of summary judgment in favor of the party who bears the burden of proof is somewhat unusual, but is clearly contemplated under Fed.R.Civ.P. 56(a). *See Duran,* 904 F.2d at 1377. *Cf. Froemming v. Gate City Fed. Sav. and Loan Ass'n,* 822 F.2d 723, 727 (8th Cir. 1987) (directed verdict for plaintiff proper only if established by undisputed testimony of disinterested witnesses and different minds could draw only one conclusion from the evidence); 9 C. Wright and A. Miller, Federal Practice and Procedure § 2535 (1971) (court may direct verdict for party having burden of proof if that party has proven case by evidence jury is not at liberty to disbelieve). In this case, the crucial evidence is not only uncontradicted, but was actually taken from the depositions of the defendants themselves.

We agree with the district court that the prison visitor exception in *Hunter* cannot govern this case. Both *Hunter,* 672 F.2d at 674, and our subsequent case, *Smothers v. Gibson,* 778 F.2d 470 (8th Cir.1985), premise the State's ability to conduct warrantless strip searches of prison visitors on the State's interest in keeping contraband out of the prisons. The *Hunter* court expounded at length on the danger posed by visitors smuggling contraband into prisons, 672 F.2d at 674, and this was its sole rationale for condoning warrantless strip searches. Likewise, in *Smothers,* this court reversed a summary judgment for defendants on a claim of unreasonable search (which search occurred before the *Hunter* decision was handed down) and remanded for trial when a prison visitor was strip searched as she was returning to the prison visiting room from the restroom . 778 F.2d at 472. There, the visitor was returning to the environment in which she could have posed a danger of smuggling, and a triable issue therefore existed as to whether she could legitimately be subjected to a warrantless strip search.

Despite the fact that Nicole Marriott had been a jail visitor, the *Hunter* rule cannot apply in her case for the simple fact that she was searched *after, not before,* her visit. The scope of an exception to the warrant requirement is defined by the rationale of the exception. *See Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In this case, the search occurred when Nicole Marriott no longer posed a threat to prison security. Hanrahan's testimony leaves no doubt that Nicole was on her way out of the jail and thus could no longer be viewed as a potential smuggler at the time Rumbo searched her. Hanrahan testified:

Q. And was the visit cut short with Rob that day [March 21]?

A. I believe that visits were stopped at around 20 till 6 that day. Normally they would have been stopped at around 10 or 5 till 6.

Q. Were there other people visiting there at that time?

A. We ran everyone out.

Q. Okay. And when you ran everyone out, visiting hours were over; is that right?

A. It was all over.

\* \* \* \* \* \*

A. I walked into the booking room and said, "The visit's over," and asked Robbie to come with me.

\* \* \* \* \* \*

Q. All right. Were you in charge of the jail at that point?

A. Yes, I would have been.

Q. And when you told Nicole that the visit was over, you had no intention of allowing her to see Robbie anymore that day?

A. That's true.

Q. At that point, there was no way that Nicole, if she had not already passed something to Robbie, there was no way she was going to be able to pass it to Robbie that day, correct?

A. I would have to agree.

In fact, Hanrahan stated that he had Nicole Marriott searched because he feared that

she would *not* try to smuggle contraband into the jail in the future: "I felt if she was allowed to leave knowing that we had searched Robbie—which I'm sure she would have found out—that it was entirely possible that there would be no reintroduction of contraband into the jail." This was a clear admission that the purpose of the search was to catch Nicole Marriott in a crime, not to protect the Morgan County Jail from contraband.

Once Nicole Marriott no longer posed a threat as a smuggler, the defendants' search of her person could not be justified under the *Hunter* prison visitor exception to the warrant requirement. Instead, the search occurred as part of an ordinary criminal investigation and the defendants needed either a warrant based on probable cause, *see New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981), or an applicable exception to the warrant requirement (such as search incident to arrest, *see, e.g., id.*) to search Marriott. There was no warrant. The defendants do not argue that an alternative exception to the warrant requirement applied, and it is they who bear the burden of proving any such exception. *Chimel*, 395 U.S. at 762, 89 S.Ct. at 2039. Therefore, they have violated Nicole Marriott's fourth amendment rights.

 The defendants argue that they are entitled to qualified immunity because reasonable officers could have believed their actions were legitimate under the *Hunter* exception to the warrant requirement. *See Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). ("The relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed.") While officers are certainly not required to anticipate new developments in the law, in this case the law has not changed, and is not changed by this opinion. Defendants simply rely on a grievous misreading of existing case law. Nothing in the *Hunter* or *Smothers* cases suggests that prison visi-

tors' fourth amendment rights not to be searched without a warrant are abridged *after* their visit and *after* the danger of smuggling has passed. The mere fact that this case and *Hunter* involved people who had gone to visit prisoners is a superficial similarity. That similarity does not justify an officer in relying on *Hunter* when the purpose for the *Hunter* rule does not exist. The district court correctly ruled that defendants are not entitled to qualified immunity.

The judgment of the district court is affirmed. This case is remanded to the district court so that it may proceed to trial on the issue of damages.