778 F.2d 470
 Burlis SMOTHERS, Appellant,
v.
Lt. J. GIBSON; Off. J. Stephens; Warden Willis Sargent,
Warden of the Cummins Unit of the Arkansas Department of
Correction; A.L. Lockhart, Director of the Arkansas
Department of Correction; Off. Outlaw; Major Young;
Warden Terry; Warden Larry Norris; Jane Doe; Mary Doe, Appellees.
 No. 85-1745.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 19, 1985.
Decided Nov. 27, 1985.
 
 John Wesley Hall, Jr., Little Rock, Ark., for appellant.
 Randal Miller, Asst. Atty. Gen., Little Rock, Ark., for appellees.
 Before HEANEY, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Burlis Smothers, a seventy-two year old woman, appeals from the district court's order granting the defendant's motion for summary judgment and dismissing her claim for damages under 42 U.S.C. Sec. 1983 for alleged civil rights violations arising out of a strip search. Smothers was searched by personnel of the Cummins Unit of the Arkansas Department of Correction while she was visiting her son who is confined at that institution. The district court determined that the Cummins Unit was entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), because the law on when a strip search is constitutionally permissible was not clearly established at the time of the search. We hold that summary judgment was inappropriate and reverse and remand.
 
 FACTS
 
 2
 In December of 1981 or January of 1982, Burlis Smothers visited the Cummins Unit of the Arkansas Department of Correction where her son was incarcerated. After visiting for approximately one hour, Smothers went to the restroom. As she was returning, she was intercepted by Lt. Steve Outlaw and, without being told why, she was ordered to follow him. She was taken to a room and was strip searched by a female officer. The body search revealed no drugs or other contraband.
 
 
 3
 Smothers had been visiting her son every other week for the preceding eight years. She had been strip searched at least seven times in that eight years. None of those searches had proved fruitful. Moreover, the prison authorities had never discovered any drugs in her son's possession.
 
 
 4
 Assistant Warden of Security Larry Norris ordered the strip search, allegedly because of an informant's tip that she allegedly would be bringing drugs into the prison. At the time of this search, Arkansas law[1] as well as a policy of the Arkansas Department of Correction[2] specifically authorized searches of any visitors to the institution. (While neither the statute nor the prison rule specifically authorized strip searches, the prison officials construed them to permit such searches.)
 
 
 5
 On March 11, 1982, the Eighth Circuit determined the level of suspicion necessary to justify a strip search of a prison visitor. In Hunter v. Auger, 672 F.2d 668, 675 (8th Cir.1982), this Court announced that to be constitutionally sound, a strip search of a prison visitor must be based on "reasonable suspicion," something more than an informant's tip. Id., at 675.
 
 
 6
 On January 4, 1983, Smothers commenced this action alleging violation of her civil rights. The Cummins Unit moved for summary judgment, contending that it was entitled to qualified immunity under Harlow, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, because the law as to when a prison visitor could be justifiably strip searched was sufficiently unsettled at the time of the search. The district court agreed and granted the motion stating: "[D]efendant's reliance on state law and department policy was not unreasonable in light of the uncertainty in the existing law." Smothers appeals.
 
 ANALYSIS
 
 7
 Whether an official may prevail in his qualified immunity defense depends upon the "objective unreasonableness of [his] conduct as measured by reference to clearly established law." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. Thus, the question before us is whether strip searching a sixty eight year old prison visitor, upon an informant's tip that she would be carrying drugs, was reasonable in light of the state of the law in 1981.
 
 
 8
 Smothers contends that the law prohibiting this search was clearly established prior to its occurrence. The Cummins Unit argues that it should be accorded qualified immunity from liability for damages because the law of prison visitor strip searches was not clearly established in 1981. It claims that this strip search was authorized under state law pursuant to Ark.Stat.Ann. Sec. 41-2852 (Repl.1977), and under prison Visitation Rule N. It also claims that it could not have been expected to predict future legal developments. We reject the prison's argument. The fourth amendment rights prohibiting this search were "clearly established" in 1981, and thus the search was unreasonable.
 
 
 9
 It cannot be denied that Smothers had, in 1981, a "clearly established" fourth amendment right to be free of unreasonable searches. To determine the reasonableness of any search requires balancing the need to search against the invasion which the search entails. Delaware v. Prouse, 440 U.S. 648, 653-54, 99 S.Ct. 1391, 1395-96, 59 L.Ed.2d 660 (1979). And, the facts upon which the intrusion is based must "be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test." Id.
 
 
 10
 In balancing the Cummins Unit's interest in institutional security, against the intrusion upon Smothers, perhaps the greatest personal intrusion searching officials can visit upon an individual, we find that such a search could only have been justified if the facts upon which it was based were, at a minimum, measured against some sort of objective test.
 
 
 11
 The Cummins Unit relied on a state law and a prison rule as authority to strip search, indiscriminately, anyone who entered the prison. We do not read the statute or the rule so broadly. While prison officials have the right to conduct reasonable searches of prison visitors, with far greater latitude than in other settings, the right to indiscriminately strip search anyone who enters is not and cannot be authorized. Their alleged reliance on an informant's tip as justification was equally unreasonable on the facts here. An anonymous tip requires some measure of corroboration to warrant official action. Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Before a tip can justify a search, "the nature of the tip, the reliability of the informant, the degree of corroboration, other factors contributing to suspicion or the lack thereof, and the nature and extent of the search must all be assessed." United States v. Afanader, 567 F.2d 1325, 1329 n. 4 (5th Cir.1978).
 
 
 12
 Here, the record is totally devoid of any information as to the nature of the tip, or the reliability of the informant, or the degree of corroboration, assuming there was any. Moreover, the record is replete with other factors contributing to the "lack of suspicion." Smothers, a 68 year old mother, had been visiting her son on a weekly basis, without incident, over the eight year period preceding the search at issue. She had been strip searched seven times before, and no contraband was ever discovered. And, on this particular day, she had been sitting with her son in the visitation area for over an hour before she was searched. All of these facts demonstrate, at the very least, that questions exist as to the reasonableness of this search which should be answered at trial. Summary judgment, on the basis of qualified immunity was inappropriate.
 
 
 13
 Reversed and remanded for trial.
 
 
 
 [1]
 Hereafter it shall be lawful for the Superintendent, Warden, or Jailor, or their duly authorized agent to search the person or vehicle of anyone seeking admission to, or to visit in, the State Penitentiary, reformatories, industrial schools, county penal farms, jails, state institutions, or other places of confinement where prisoners are confined
 Ark.Stat.Ann. Sec. 41-2852 (Repl.1977).
 
 
 [2]
 Visitors may be requested to submit to a search and/or a review by electronic device for contraband. Entrance may be denied if the visitor is not willing to submit. Prior to being approved to the list, each visitor must complete the "Search Authorization" form. Any search conducted of a visitor shall be conducted by departmental staff personnel only. Female visitors and their property shall be searched only by female staff personnel. Male visitors and their property shall be searched only by male staff personnel
 Visitation Rule N.