Kenneth DAUGHERTY, As personal representative of Lenora Daugherty, deceased, Plaintiff–Appellant,

v.

Donal CAMPBELL, et al., Defendants–Appellees.

No. 93–5378.

United States Court of Appeals, Sixth Circuit.

Argued May 5, 1994.

Decided Aug. 9, 1994.

Rehearing Denied Sept. 2, 1994.*

James L. Weatherly, Jr. (argued and briefed), John J. Hollins, Jr. (briefed), Hollins, Wagster & Yarbrough, Nashville, TN, for plaintiff-appellant.

Brenda Rhoton Little, Jimmy G. Creecy, Charles E. Robinson, Asst. Attys. Gen., Criminal Justice Div., Michael E. Moore (argued), Waller, Lansden, Dortch & Davis, Kristin E. Berexa (briefed), Farrar & Bates, Nashville, TN, Robert B. Littleton (argued and briefed), Trabue, Sturdivant & DeWitt, for defendants-appellees.

Before: KEITH and SUHRHEINRICH, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

* Judge Suhrheinrich would adhere to his dissent    or grant a rehearing.

KEITH, Circuit Judge, delivered the opinion of the court, in which CELEBREZZE, Senior Circuit Judge, joined. SUHRHEINRICH, Circuit Judge (pp. 557-60), delivered a separate dissenting opinion.

KEITH, Circuit Judge.

Plaintiff–Appellant ("Plaintiff") appeals a jury verdict finding the Defendants–Appellees ("Defendants") did not violate the Fourth Amendment rights of decedent Lenora Daugherty ("Daugherty"). For the reasons stated below, we **REVERSE** the jury verdict and find as a matter of law Defendant Donal Campbell's ("Campbell") reliance on uncorroborated information is insufficient to constitute reasonable suspicion necessary to authorize a strip search of a prison visitor. Further, we **GRANT** Plaintiff's motion for judgment as a matter of law and **REMAND** for a determination on the issue of damages.

## I. Facts

From September 30, 1986 until January 16, 1988, Daugherty often visited her husband, a state inmate at the Turney Center ("Center"). Prior to her January 16, 1988 visit, Center Corrections Officer Robert Starbuck ("Starbuck") allegedly told Campbell, the Warden of the Center, Daugherty was concealing drugs on her person and smuggling them into the Center.[1] Additionally, Campbell received two letters which indicated Daugherty was smuggling drugs into the Center. The first dated January 7, 1988 was an anonymous letter. The second dated January 12, 1988 was signed by Lori Elliot. Later, investigation revealed that "Lori Elliot" did not exist. Campbell, relying solely on Starbuck's information, ordered a strip search of Daugherty and a search of her vehicle for narcotics prior to any visit with her husband.

On January 16, 1988, prison personnel instructed Daugherty to submit to a strip search,[2] a visual body cavity search[3] and a search of her vehicle. None of the searches revealed contraband.

On June 8, 1988, Daugherty filed a § 1983 claim in the United States District Court for the Middle District of Tennessee alleging the Defendants violated her Fourth Amendment rights. Campbell moved for judgment on the pleadings and to stay discovery. The district court referred all pretrial matters to a magistrate judge who recommended the district court deny Campbell's motion for summary judgment based on qualified immunity for Daugherty's Fourth Amendment claims. Upon the request of the district court, the magistrate issued a second report recommending the district court grant the motion for summary judgment based on qualified immunity for the vehicle search. The district court adopted both reports and recommendations. Campbell appealed the denial of summary judgment, and this court affirmed finding Campbell was not entitled to qualified immunity. *See Daugherty v. Campbell*, 935 F.2d 780 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 939, 117 L.Ed.2d 110 (1991).

On September 2, 1992, the district court granted Daugherty's motion to amend her complaint to include a Fourteenth Amendment claim. The jury trial commenced the same day and ended September 4, 1992. At the close of all proof, the district court determined as a matter of law that the Defendants were entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim and dismissed the claim. The jury returned a verdict for the Defendants on Daugherty's Fourth Amendment claim.

On September 15, 1992, Plaintiff renewed her motion for judgment as a matter of law or in the alternative for a new trial. The district court denied the motion. This timely appeal followed.

---

1. While not determinative of the issues in this case, it is interesting to note Starbuck stated he could not recall giving Campbell information concerning Daugherty and drug smuggling activities.

2. A strip search is an inspection of a naked individual without scrutinizing the subject's body cavities.

3. A visual body cavity search is a visual inspection of a naked individual that includes the anal and genital areas.

## II. Discussion

On appeal, Plaintiff argues the district court erred by:

(1) denying her motion for judgment as a matter of law on the issue of whether Campbell had reasonable suspicion and/or probable cause to authorize a strip search of her person;

(2) denying her motion for judgment as a matter of law on the issue of whether she consented to the search; and

(3) granting Defendants qualified immunity on the issue of her Fourteenth Amendment due process claim based on the search of her person.

We find Campbell's reliance on wholly unsubstantiated information relayed by a correctional officer without corroboration is insufficient to constitute reasonable suspicion necessary to authorize a strip search of a prison visitor. We, therefore, decline to address Plaintiff's remaining allegations of error.

### 1. Standard of Review

■ When reviewing a district court's denial of a motion for judgment as a matter of law, we consider *de novo* whether there is sufficient evidence to raise a question of fact for the jury. *Hill v. Marshall,* 962 F.2d 1209 (6th Cir.1992), *cert. denied, Morris v. Hill,* — U.S. —, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993). "Sufficient evidence will be found unless, viewed in the light most favorable to the nonmovant, there is either complete absence of proof on the issue or no controverted issues of fact upon which reasonable persons could differ." *Monette v. AM–7–7 Baking Co.,* 929 F.2d 276, 280 (6th Cir.1991) (citations omitted).

### 2. Reasonable Suspicion Standard

■ A strip search, regardless of how professionally and courteously conducted, is an embarrassing and humiliating experience. *See Hunter v. Auger,* 672 F.2d 668, 674 (8th Cir.1982); *United States v. Sandler,* 644 F.2d 1163, 1167 (5th Cir.1981) (*en banc*); *United States v. Dorsey,* 641 F.2d 1213, 1217 (7th Cir.1981); *cf. Terry v. Ohio,* 392 U.S. 1, 24–25, 88 S.Ct. 1868, 1881–82, 20 L.Ed.2d 889 (1968) (noting even a search of outer clothing for weapons is likely to be an annoying, frightening, and possibly humiliating experience). Consequently, reasonable suspicion must exist before a strip search is authorized for prison visitors. *See Daugherty v. Campbell,* 935 F.2d 780, 784 (6th Cir.1991); *Long v. Norris,* 929 F.2d 1111, 1113 (6th Cir.), *cert. denied, Jones v. Long,* — U.S. —, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991); *Hunter,* 672 F.2d at 674.

■ Campbell argues because Starbuck was a reliable corrections officer, his statements, unlike those from an anonymous informant, required no corroboration. We disagree. Here, Starbuck did not act as an informant but merely as a declarant. An officer's recitation of a tip does not automatically vest the information with credibility or reliability, nor does it transform the officer into a reliable informant. Campbell could not rely on an uncorroborated anonymous tip merely because it was relayed by an officer.

Generalized suspicion of smuggling activity does not justify a strip search. *Hunter v. Auger,* 672 F.2d 668, 674 (8th Cir.1982); *see also Daugherty v. Campbell,* 935 F.2d at 785; *Blackburn v. Snow,* 771 F.2d 556 (1st Cir. 1985); *Thorne v. Jones,* 765 F.2d 1270, 1276 (5th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986); *Smothers v. Gibson,* 778 F.2d 470, 472 (8th Cir.1985). Instead, reasonable suspicion requires individualized suspicion, specifically directed toward the person targeted for the strip search. *Hunter,* 672 F.2d at 675. Reasonable suspicion exists only if the information contained in the tip is linked to other objective facts known by correctional authorities. *Id.* at 676.

■■ We find the reasoning of our sister circuits persuasive on this issue. The Eighth Circuit held that "[a] strip search based on [a] bald assertion contained in [an] anonymous tip is clearly not based on a reasonable suspicion of drug smuggling activity." *Hunter,* 672 F.2d at 676. Regardless of who relays such a tip, information in an anonymous tip must "possess indicia of reliability sufficient to give prison officials reasonable grounds to suspect drug smuggling activity." *Id.* Before a tip may justify a search, "the nature of the tip, the reliability of the infor-

mant, the degree of corroboration, other factors contributing to suspicion or the lack thereof, and the nature and extent of the search must all be assessed." *United States v. Afanador,* 567 F.2d 1325, 1329 n. 4 (5th Cir.1978); *see also Smothers,* 778 F.2d at 472; *Thorne,* 765 F.2d at 1277. An anonymous tip requires some measure of corroboration to warrant official action. *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972).

Here, Campbell relied solely on Starbuck's uncorroborated allegation. His reliance on a wholly uncorroborated tip is, under the facts of this case, insufficient to constitute reasonable suspicion. First, the information was general in nature. The declarant baldly asserted Daugherty was smuggling drugs into the Center without any objective facts to corroborate the allegation. In fact, readily accessible information discredited the tip. Although over a two year period Daugherty frequently visited the Center, and officials were very familiar with her, she never had been suspected of smuggling activity. Additionally, Daugherty's husband had never been caught with drugs or been involved in drug related activities in the Center.

Campbell received two letters, one from an anonymous inmate and one from a non-existent person. He concedes, however, the letters do not constitute reasonable suspicion. Indeed, neither the letters nor Starbuck's alleged bald assertion have any indicia of reliability. Furthermore, the combination of the unsubstantiated letters and the disputed assertion have no indicia of reliability. We, therefore, find the uncorroborated information upon which Campbell relied did not constitute reasonable suspicion.

Despite the dissent's assertions to the contrary, we do not impose a duty on wardens to investigate the reliability of all their officers' conclusions. Rather, we hold as a matter of law, in this case, where no independent objective information existed, the information upon which Campbell relied was insufficient to warrant a strip search. While the dissent emphasizes Campbell received *two* anonymous tips, in reality one was from a non-existent person, and therefore, had absolutely no probative value. Essentially, the dis-

sent asserts that Starbuck's status as a corrections officer automatically substantiated his allegation, and thus provided reasonable grounds for suspecting Daugherty was smuggling drugs. Absent independent evidence to support Starbuck's alleged tip, status alone does not impart reasonable suspicion, nor does status combined with an anonymous tip and a tip from a non-existent person. This is especially true where neither the visitor nor the inmate had ever been suspected of previous smuggling activity and the corrections officer can not recall relaying the tip.

The operative principle of Fourth Amendment is its prohibition against *unreasonable* searches and seizures. To allow the scant information presented in this case to justify an intrusive and humiliating strip search of a prison visitor renders the Fourth Amendment's protections meaningless. Using the dissent's standard of reasonable suspicion, any time a corrections officer tells a warden a specific visitor is smuggling contraband on his person, a strip search is warranted. Clearly, strip searches of prison visitors based upon bare allegations of illegal activities, whether by anonymous informants or a corrections officer who later denies making such allegations, contravene the well-established protections of the Fourth Amendment.

### III. Conclusion

For the reasons stated above, we **REVERSE** the jury verdict and hold Campbell's reliance on an uncorroborated tip did not provide reasonable suspicion necessary to authorize a strip search. We, therefore, **GRANT** Plaintiff's motion for judgment as a matter of law and **REMAND** for a determination on the issue of damages.

SUHRHEINRICH, Circuit Judge, dissenting.

The majority holds that there was insufficient evidence to permit the jury to determine whether Warden Campbell's decision to order a strip search of the plaintiff was supported by reasonable suspicion. Because I believe that the evidence was sufficient to raise a genuine issue regarding this material fact, I would affirm the judgment entered in

favor of the defendants and, therefore, I must dissent.[1]

The majority's decision is based on its assertion that "[a]n anonymous tip requires some measure of corroboration to warrant official action." Maj. Op. at 557. As authority for this statement, the majority cites *Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Nothing in *Adams*, however, purports to establish a requirement of "corroboration" and, in my view, the holding of *Adams* dictates that we affirm the district court's decision that the evidence in this case could support a finding that Warden Campbell acted with sufficient justification.

In *Adams*, an informant approached an officer and informed him that a suspect seated in a nearby parked car was carrying narcotics and a gun. The officer walked over to the car, had the suspect roll down the window and reached in to retrieve the gun. *Id.* at 144–45, 92 S.Ct. at 1922–23. The officer did not "corroborate" anything before conducting the search, he simply acted on what he had been told. The Court, in upholding the search, concluded:

> [W]e believe [the officer] acted justifiably in responding to his informant's tip. The informant was known to him personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip. The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, ... the informant might have been subject to immediate arrest for making a false complaint had [the officer's] investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's *unverified* tip may have been insufficient for a narcotics arrest or search warrant ... the information carried enough indicia of reliability to justify the officer's forcible stop of Williams.

*Id.* at 146–47, 92 S.Ct. at 1923 (emphasis added and citations omitted).

Nothing in the *Adams* opinion suggests that the tip included anything other than the informant's conclusion that the suspect was armed and certainly the Court imposed no requirement that the officer inquire as to the basis for the informant's conclusion. In a later case, the Court revisited *Adams*, stating:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is *less reliable* than that required to show probable cause. *Adams v. Williams*, ... demonstrates as much. We there assumed that the *unverified* tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop.

*Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990) (emphasis added).

In construing *Adams*, this court has recognized that "the *Adams*' tipster's conclusory statements that a man seated in a car possessed a gun carried no 'indicia of reliability' " and that the reasonableness of the officer's suspicion in that case turned entirely on "the source of the information[,] the tipster who was known and at the scene." *United States v. Andrews*, 600 F.2d 563, 568 (6th Cir.) (Keith, J.), *cert. denied*, 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979). Accordingly, I believe that *Adams* stands for the proposition that "conclusory statements" from an informant may constitute reasonable suspicion if the informant is known to the officer, is on hand, and sufficient "indicia of reliability" surrounding the informant's tip

**1.** Because, in my view, the jury's general verdict in favor of the defendants in this case was supported by sufficient evidence of reasonable suspicion, I need not address plaintiff's argument challenging the sufficiency of the evidence regarding the issue of consent, which was also submitted to the jury. *Cf. Griffin v. United States*, 502 U.S. 46, ——, 112 S.Ct. 466, 469, 116 L.Ed.2d 371 (1991) (holding, in a criminal case, that a "general jury verdict was valid so long as it was legally supportable on one of the submitted grounds—even though that gave no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action").

are created by the threat of some form of retribution should the officer determine that the accusation was completely baseless.

In the present case, Warden Campbell authorized the strip search of plaintiff because Officer Starbuck told him that plaintiff was concealing drugs on her person and smuggling them into the prison.[2] Officer Starbuck was known to Warden Campbell and had provided reliable information in the past. Unlike the "civilian" informant in *Adams,* who just happened to be on hand at two in the morning, Officer Starbuck was duty-bound to assist Warden Campbell in interdicting the flow of drugs into the prison annex and otherwise preserving order in the prison. Finally, Officer Starbuck was presumably subject to discipline or dismissal if it were determined that he was making groundless accusations, a threat far more realistic, and thus carrying greater "indicia of reliability," than that cited by the Court in *Adams.*[3]

Moreover, Officer Starbuck's conclusions were not the only data available to Warden Campbell when he authorized the strip search of plaintiff. Warden Campbell had also received two anonymous[4] tips in the form of letters, each of which asserted that plaintiff had been smuggling marijuana into the prison to give to her husband. The letters arrived nearly a week apart and, significantly, came from both inside and outside the prison. Nevertheless, Warden Campbell did not act on the basis of these letters because he felt that they lacked credibility. When confronted with a competent and reliable officer who had reached the identical conclusion, however, Warden Campbell authorized the search.

The majority relies on several cases from other circuits to support its conclusion that Warden Campbell, despite the two anonymous letters, was required to corroborate Officer Starbuck's conclusions before relying upon them. In *Hunter v. Auger,* 672 F.2d 668 (8th Cir.1982), the court held that each of three separate strip searches had been conducted without reasonable suspicion because each was conducted on the basis of a *single* anonymous tip. *Id.* at 670–71, 677. Here, of course, the strip search of plaintiff was conducted on the basis of *two* anonymous tips, each from a different source and both specifically accusing plaintiff, as well as the conclusions of a known and reliable "informant," Officer Starbuck.

The majority also relies on *Smothers v. Gibson,* 778 F.2d 470 (8th Cir.1985), in which prison officials strip searched an inmate's sixty-eight-year-old mother on the basis of a single anonymous tip even though they had repeatedly strip searched the woman during her eight years of weekly visits and neither she nor her inmate son had ever been found in possession of contraband. *Id.* at 472. The majority, however, fails to note that even on those egregious facts, the court concluded that "questions exist as to the reasonableness of this search which should be answered *at trial.*" *Id.* at 473 (emphasis added).

The remaining cases cited by the majority, *Thorne v. Jones,* 765 F.2d 1270 (5th Cir. 1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986), and *United States v. Afanador,* 567 F.2d 1325 (5th Cir. 1978), bear no resemblance to the present case because the strip searches in those cases were conducted not only on the basis of a single uncorroborated tip, but also on the basis of tips that were not even directed at

---

**2.** This was not an isolated, off-hand comment by Officer Starbuck, as the majority intimates. Rather, it was Warden Campbell's capsulization of the numerous phone conversations about the plaintiff that he had had with Officer Starbuck in the weeks prior to the visit during which she was strip searched.

**3.** As for the majority's attempt to discredit Officer Starbuck's conclusions by referring to him "merely as a declarant," the Supreme Court rejected a similar argument in *Adams,* stating that "when a credible informant warns of a specific

impending crime—the subtleties of the hearsay rule should not thwart an appropriate police response." *Adams,* 407 U.S. at 147, 92 S.Ct. at 1923.

**4.** I am puzzled by the majority's repeated reference to one of these letters having been written by "a non-existent person." *See* Maj. Op. at 556, 557. The fact that the author who penned the letter from outside the prison chose to use a fictitious name merely renders that letter, in my view, "anonymous" and does not render the author thereof "non-existent."

the party searched. *See Thorne*, 765 F.2d at 1271 (informant's tip that inmate's mother was smuggling in drugs held insufficient to justify strip search of inmate's father who was accompanying her); *Afanador*, 567 F.2d at 1330–31 (informant's tip that one stewardess was smuggling drugs held insufficient to justify strip search of entire crew).

The reasonable suspicion standard, as employed in the present context, is chiefly aimed at curbing arbitrary searches by government officials who, for reasons of public policy, are not otherwise constrained by the warrant and probable cause requirements. *See O'Connor v. Ortega*, 480 U.S. 709, 720, 107 S.Ct. 1492, 1499, 94 L.Ed.2d 714 (1987) (plurality opinion) (non-law enforcement officials are permitted to conduct searches and seizures without a warrant or probable cause when presented with " 'exceptional circumstances in which special needs, beyond the normal need for law enforcement, make the warrant the probable-cause requirement impracticable' ") (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351, 105 S.Ct. 733, 748, 83 L.Ed.2d 720 (1985) (Blackmun, J., concurring)).

This lessened standard ensures, first, that such searches are not conducted on the basis of "insubstantial 'hunches,' based on individual perceptions rather than independent, articulable facts...." *Hunter*, 672 F.2d at 675. Second, the reasonable suspicion standard guarantees that the searches are conducted on the basis of individualized suspicion rather than a generalized belief that *someone*, though not necessarily the party searched, is smuggling drugs. *Id.* In short, the test is whether, in light of all the circumstances, there are "reasonable grounds for suspecting" that a search of a particular person will reveal the particular items sought. *T.L.O.*, 469 U.S. at 342, 105 S.Ct. at 743.

In the present case, there was sufficient evidence from which a jury could conclude, in light of all of the circumstances known to Warden Campbell, that he had "reasonable grounds for suspecting" that a strip search of the plaintiff would reveal that she was attempting to smuggle drugs into the prison. He had been informed from three separate sources, two anonymous and the third a trusted and trustworthy subordinate, that plaintiff had smuggled drugs into the prison in the past and that she would do so in the future.

The majority's holding in this case amounts to nothing less than the imposition of duty on the part of a prison warden to *investigate* the reliability of his officer's conclusions on a case-by-case basis. Such a duty, as the discussion above reveals, is unprecedented and, I believe, unwarranted. The Fourth Amendment rights of those who seek to enter these controlled environments are adequately protected by requiring that there be an objective, individualized basis for believing that they are secreting drugs into the prison before being subjected to a strip search. By imposing a "duty to investigate," the majority is attempting to construct a bright-line test under the reasonable suspicion standard, even though the Supreme Court has specifically rejected a similar approach in favor of a "totality of the circumstances" test under the more stringent, probable cause standard. *See Illinois v. Gates*, 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983).

Inherent in the less-strict reasonable suspicion standard is the recognition that prison wardens are not limited to searching only as a last resort. Equally inherent is the recognition that prison officials may, from time to time, order a search which fails to reveal any contraband and that they may do so without being subjected to civil liability.

Were I sitting as the trier of fact in this case, I might conclude, as the majority has, that Warden Campbell acted without sufficient justification. I am unwilling to say, however, that no reasonable person could disagree with me. Accordingly, I must dissent.