78 F.3d 584
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ralph DUNAWAY; James Butler; Woodrow Marbry; Danny
Campbell, Plaintiffs-Appellees,
v.
Joe D. MOORE, in his official capacity as Superintendent of
Highways, McNairy County, Tennessee; McNairy
County, Tennessee, Defendants-Appellants,
Houston Thrasher, Individually and as County Executive of
McNairy County, Tennessee; Ronald Henry; Gladys Robertson;
Jerry Sullivan; Jimmy Phillips; Coleman Smith; Fred
Templeton; Gayle Brooks; Anthony E. Knight; Patrick
Landreth; Guy Wayne Cox; Glenn Maness; Tim Derryberry;
Sue Johnson; James P. Prather; Wilburn Gene Ashe; Charles
E. Ellis; Gail Forsythe; John R. Morgan; Grover Rickman;
Effie Woods; Jim Richman, all as County Commissioners of
McNairy County, Tennessee, Defendants.
 Nos. 94-6068, 94-6125.
 United States Court of Appeals, Sixth Circuit.
 March 7, 1996.
 
 Before: BOGGS and DAUGHTREY, Circuit Judges, and McKEAGUE, District Judge,*
 PER CURIAM.
 
 
 1
 Appeal is taken from the judgment of the United States District Court for the Western District of Tennessee, the Honorable James Todd. Plaintiffs-Appellees Ralph Dunaway, James H. Butler, Woodrow Marbry, and Danny Campbell are former employees of the McNairy County (Tennessee) Highway Department. They were at-will employees who, by decision of Superintendent of Highways, Joe D. Moore, were not called back to work in January 1991, after the annual seasonal layoff. They brought suit alleging they were unlawfully discharged because they supported their superior's, Moore's, political opponent in the preceding election of the McNairy County Superintendent of Highways. Proceeding, in relevant part, under 42 U.S.C. §§ 1983 and 1985 for violation of their First and Fourteenth Amendment rights, plaintiffs named as defendants Joe D. Moore, McNairy County, County Executive Houston Thrasher, and all 21 County Commissioners. Trial was conducted in October 1993. After the trial court awarded judgment as a matter of law to all defendants but Moore, the jury returned a verdict in plaintiffs' favor and against defendant Moore, awarding compensatory and punitive damages. The trial court granted defendant Moore's motion to set aside the verdict only in part; setting aside the punitive damages award and ordering a partial remittitur. This appeal followed. Appellants Joe D. Moore and McNairy County complain of several errors, procedural and substantive.
 
 I. QUALIFIED IMMUNITY
 
 2
 Appellants raise two questions concerning the trial court's treatment of defendant Moore's qualified immunity defense. First, they argue the court erred when it denied Moore's motion for judgment as a matter of law at the close of the proofs. Second, they contend that when the trial court reversed itself post-trial, recognizing Moore's immunity from liability for damages in his individual capacity, the remedy employed was not effective to undo all the prejudice done.
 
 
 3
 The issue of qualified immunity is essentially a legal question, subject to de novo review on appeal. Williams v. Pollard, 44 F.3d 433, 434 (6th Cir.1994). Qualified immunity protects officials who perform discretionary functions from individual liability for damages that have resulted from their performance of those discretionary functions. Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir.1994). To overcome the defense, a plaintiff must not only establish a constitutional violation, but must show that the right in question was clearly established at the time of the violation. Centanni v. Eight Unknown Officers, 15 F.3d 587, 592 (6th Cir.), cert. denied, 114 S.Ct. 2740 (1994). The exact circumstances of the given case need not have been previously held illegal for the right to be "clearly established;" but still, the right must be unmistakably clear in a particularized sense, to put a reasonable official on notice that his actions are illegal or unconstitutional. Id.
 
 
 4
 To determine whether a clearly established constitutional right existed at the time of the alleged violation, a court must look first to the decisions of the Supreme Court, then to decisions of its circuit court of appeals and other courts within the circuit, and finally to decisions of other circuits. Buckner, supra, 36 F.3d at 539.
 
 
 5
 The law governing the First Amendment right here asserted by plaintiffs is well-summarized in Mumford v. Zieba, 4 F.3d 429, 433 (6th Cir.1993), as follows:
 
 
 6
 In early 1989, the relevant caselaw concerning politically motivated personnel decisions included Branti [v. Finkel], 445 U.S. 507 [ (1980) ]; Elrod [v. Burns], 427 U.S. 347 [ (1976) ]; and Balogh v. Charron, 855 F.2d 356 (6th Cir.1988). In summary, the Supreme Court directed that political patronage practices, including politically motivated discharges, were generally unconstitutional because they infringed on the protected speech and associational rights of government employees. Elrod, 427 U.S. at 358-60. However, the court reasoned that an employee's First Amendment rights could be outweighed by the need to maintain governmental effectiveness and efficiency when the employee's private political beliefs would interfere with the discharge of his public duties. Branti, 445 U.S. at 517. Thus, a governmental employee could be discharged because of his political affiliation if political affiliation was an appropriate requirement for the effective performance of the public office involved. Id. at 515; Elrod, 427 U.S. at 372-75. A failure to reappoint an individual to a position subject to at-will discharge for any reason is equally impermissible if reappointment was denied because of the individual's exercise of First Amendment rights. Branti, 445 U.S. at 515.
 
 
 7
 (Footnote omitted).
 
 
 8
 Thus, under the state of the law as it existed in early 1991, when plaintiffs were terminated, plaintiffs' First Amendment right to freedom from politically motivated discharge, as long as political affiliation was not an appropriate requirement of their positions, appears to have been generally clearly established.
 
 
 9
 When the trial court first addressed the issue at the close of the proofs, it determined (1) that genuine fact issues were presented as to whether defendant Moore's actions were politically motivated; and (2) consistent with the standards summarized in Mumford, that the unlawfulness of discharging highway workers like plaintiffs, whose work involved no policymaking or political ramifications, was clearly established. Accordingly, the trial court held Moore was not entitled to qualified immunity and could be found liable in his individual capacity.
 
 
 10
 Moore contends the trial court erred. He relies essentially on the reasoning employed by the trial court when it reversed itself post-trial. We remain unpersuaded.
 
 
 11
 In concluding that Moore was entitled to qualified immunity after all, the trial court relied on Cagle v. Gilley, 957 F.2d 1347 (6th Cir.1992). In Cagle, this Court held a sheriff was protected by qualified immunity in connection with his discharge of former deputies who had supported his opponent. After review of divergent authorities in this and other circuits, the Court determined the First Amendment protection of a deputy sheriff from patronage dismissal was not clearly established in 1988. The right was deemed unsettled due to appreciation in some cases of the close relationship between a sheriff and his deputies and the need for the sheriff to have complete control. See Terry v. Cook, 866 F.2d 373, 377 (11th Cir.1989).
 
 
 12
 Reading Cagle too broadly, the trial court concluded that unless the First Amendment protection of the particular position had been clearly established, qualified immunity would apply. Finding no prior authority for the proposition that highway workers enjoyed this protection, the trial court reconsidered its earlier ruling and declared defendant Moore immune from liability in his individual capacity.
 
 
 13
 The Cagle ruling is unquestionably sound. It cannot, however, be justifiably construed as broadly as the trial court did in this case. While it may be argued that political loyalty is essential to the performance of some of a sheriff's deputy's duties involving discretion, the same can hardly be said of highway workers whose duties included operating and servicing heavy equipment. Appellants have not even argued that any of the appellees' job duties required policymaking or political loyalty. In 1990 and 1991, the state of First Amendment protection from patronage dismissal, as set forth in Mumford, was certainly clearly enough established to enable a highway superintendent of reasonable competence to understand that he was under an affirmative duty to refrain from discharging highway workers simply because they supported his opponent. For this reason, appellants' first claim of error is denied, the trial court did not err when it denied defendant Moore's motion for judgment as a matter of law at the close of the proofs.[1]
 
 
 14
 In their second claim of error, appellants contend that when the trial court reached the "correct" result on qualified immunity, the jury had already deliberated and returned its verdict, and it was too late to remedy the earlier error without setting aside the verdict in toto. Because the trial court had initially denied the qualified immunity defense, the jury was allowed to consider Moore's liability in both his individual and official capacities. The jury returned a verdict in favor of each of the plaintiffs, assessing their damages as follows: Ralph Dunaway--$30,000; James Butler--$17,000; Woodrow Marbry--$30,000; and Danny Campbell--$17,000. In addition, the jury awarded $3,000 in punitive damages to each plaintiff. The verdict did not specify whether Moore was found liable in his individual capacity or his official capacity.
 
 
 15
 After the trial court determined Moore could not be held liable in his individual capacity, it upheld the compensatory damages verdict as properly, albeit implicitly, founded upon Moore's official capacity liability.
 
 
 16
 The trial court properly recognized the official capacity verdict against Moore as a verdict against the public entity he represented, McNairy County. Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Bush v. Rauch, 38 F.3d 842, 849 (6th Cir.1994). Because punitive damages, however, cannot generally be assessed against a governmental entity, see Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), the trial court set aside the punitive damages portion of the verdict. Neither side has objected to this, but appellants contend the remedy is incomplete.
 
 
 17
 Appellants argue that if the trial court had recognized Moore's qualified immunity at the close of the proofs, then its duty to rule as a matter of law on whether Moore had power to make official policy for McNairy County, see Jett v. Dallas Independent School Dist., 491 U.S. 701, 737 (1989), would have been manifest. Had it properly discharged this duty, the argument goes, the trial court would have found insufficient evidence to support a finding that Moore had such power. As a consequence, appellants would have been granted judgment as a matter of law on the claims for damages. Moreover, appellants impliedly suggest that even if the trial court had concluded Moore was a final policymaker for McNairy County, such a determination would have necessitated an appropriate jury instruction. Had it been made clear that a public entity would have to pay for Moore's misdeeds, appellants contend the jury may have evaluated plaintiffs' damages differently.
 
 
 18
 Appellants' arguments are based on unwarranted conjecture. First, as discussed in greater detail in part II, infra, the trial court addressed the factual basis for Moore's official capacity liability in its post-trial ruling, concluding: "The record contains sufficient evidence to support a finding that defendant Moore was an authorized McNairy County policymaker." Appellants are correct in arguing that this determination should have been explicitly made prior to jury deliberations. Yet, there is no reason to believe that the trial court, had it recognized its duty to make this determination earlier, would have reached any different conclusion. It appearing, under the circumstances, that no substantial right of the appellants was adversely affected by the earlier omission, the error must be deemed harmless. Fed.R.Civ.P. 61; Jordan v. Paccar, Inc., 37 F.3d 1181, 1184-85 (6th Cir.1994).
 
 
 19
 Second, there is no factual support for the argument that the jury's assessment of damages would have been different had it been specifically instructed that Moore could only be liable in his official capacity. In the absence of evidence to the contrary, we must presume the jury followed the instructions given, and properly determined plaintiffs' lost wages damages irrespective of the payment source. See Clarksville-Montgomery County School System v. United States Gypsum Co., 925 F.2d 993, 1003 (6th Cir.1991).
 
 
 20
 We thus find no reversible error in either the trial court's failure to recognize Moore's qualified immunity at the close of the proofs, or in the court's failure to rule specifically on Moore's official capacity liability at the close of the proofs.
 
 II. OFFICIAL CAPACITY LIABILITY
 
 21
 Appellants contend the trial court's determination that Moore was a McNairy County policymaker was not supported by sufficient evidence. The question whether Moore had final policymaking authority to discharge plaintiffs was a question of law for the trial court to decide. Jett, supra, 491 U.S. at 737. The standard of review is de novo. Wayne v. Village of Sebring, 36 F.3d 517, 525 (6th Cir.1994).
 
 
 22
 Moore acted in his official capacity and McNairy County is liable for injuries caused by his actions only insofar as he acted pursuant to official county policy or acted with final policymaking authority when he terminated appellees. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986); Meyers v. City of Cincinnati, 14 F.3d 1115, 1117-18 (6th Cir.1994). The trial court's determination that Moore did so act was based exclusively on the testimony of Moore himself and County Executive Houston Thrasher. Both testified that Moore, as Superintendent of Highways, had final decisionmaking authority with respect to hiring and firing of highway department employees.
 
 
 23
 Appellants have pointed to no contrary evidence in the record. Nor have they cited any state law authority, statutory or otherwise, that would suggest a contrary conclusion. Instead, they argue the evidence is insufficient, citing Johnson v. Hardin County, Ky., 908 F.2d 1280, 1286 (6th Cir.1990): "The power of an official to make final decisions regarding questions involving a particular subject matter, in and of itself, is not necessarily enough to establish a local government's liability." (Emphasis added).
 
 
 24
 Indeed, not every exercise of discretionary authority by any municipal official can be imputed to the municipality. It is equally clear, however, that if the subject decision was made by the municipality's authorized decisionmaker, the municipality is responsible. Meyers, supra, 14 F.3d at 1118. Defendant Moore was not just any county employee exercising discretionary authority; he was the Superintendent of Highways, undisputedly the county's authorized decisionmaker. Based on the record presented, reviewed de novo, we find no error in the trial court's ruling that Moore acted with final policymaking authority and could be held liable in his official capacity.
 
 III. WEIGHT OF THE EVIDENCE
 
 25
 In his post-trial motion for judgment as a matter of law, Moore also challenged the verdict as clearly against the weight of the evidence. Moore contended there was insufficient evidence to sustain a finding that he discharged the appellees--or, more specifically, refrained from rehiring them--for political reasons. The trial court rejected the argument and appellant reasserts it here.
 
 
 26
 We review de novo and therefore apply the same test as the district court. Wayne, supra, 36 F.3d at 525. On reviewing a motion for judgment as a matter of law because the verdict is against the weight of the evidence, the Court must determine whether there was sufficient evidence presented to raise a material issue of fact for the jury. Daugherty v. Campbell, 33 F.3d 554, 556 (6th Cir.1994). "Sufficient evidence will be found unless, viewed in the light most favorable to the non-movant, there is either a complete absence of proof on the issue or no controverted issues of fact upon which reasonable minds could differ." Id. In making this determination, the Court is not permitted to weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. Wayne, 36 F.3d at 525; O'Brien v. City of Grand Rapids, 23 F.3d 990, 995 (6th Cir.1994); Hawley v. Dresser Indus., Inc., 958 F.2d 720, 723 (6th Cir.1992).
 
 
 27
 The trial court rejected Moore's "weight of the evidence" challenge based largely on the strength of Jerry Surratt's testimony. Surratt, a twelve-year employee of the highway department, testified that Moore had told him he had a list of employees who supported his opponent, Democrat Otis Matlock; that appellees' names were included on the list; that Moore intended to fire the listed employees after the election; and that he would wait until the winter layoff "to make it legal." Surratt's testimony was partially corroborated by Lynn Kee, another highway department employee. Kee testified that Moore, upon learning that Ralph Dunaway was working against him in the election, said "if that's the game he wants to play, well, he's had it." Further, the trial court noted that Moore's given reason for the terminations, budget problems, was called into question by the testimony of co-defendant Houston Thrasher, County Executive. Thrasher characterized it as a "tough budget year," but said he was unaware of a need to cut employees.
 
 
 28
 Moore maintains this evidence is a mere scintilla, insufficient to support the verdict. He points first to his own trial testimony, contending appellees were at-will employees who were not called back to work in January 1991 after the annual seasonal layoff because they were not needed and money was short. Second, he cites appellees' testimony to the effect that they had all been recalled to work after the annual seasonal layoffs in preceding years even though some of them had also supported Moore's opponent in the prior election four years earlier. Third, Moore cites evidence that other employees who were Matlock supporters were not terminated. Fourth, he argues there is no direct evidence that he even knew of appellees' support of Matlock. Finally, he contends Surratt was not a credible witness.
 
 
 29
 The evidence and arguments cited by Moore are colorable, creating material fact issues for the jury. They certainly do not, however, negate or overwhelm the substantial contrary evidence. On review, we may not weigh the evidence or assess the credibility of witnesses, but must view the evidence in the light most favorable to the appellees. In so doing, we do not find a complete lack of evidence supporting the finding that Moore's conduct was politically motivated. Substantial evidence was presented upon which the jury could have reasonably reached its verdict. The verdict is not against the weight of the evidence.
 
 IV. SUPPLEMENTAL INSTRUCTION
 
 30
 Appellant Moore contends he was denied a fair trial by virtue of a coercive supplemental instruction given by the trial court after deliberations had begun. In determining whether the instruction was coercive, we must consider the totality of the circumstances surrounding the instruction and evaluate it in context. United States v. Aloi, 9 F.3d 438, 443 (6th Cir.1993).
 
 
 31
 The trial spanned three days. Jury deliberations began at about 3:40 p.m. on the second day and continued until 5:20 p.m., when the jury was excused. The jury resumed its deliberations at 9:30 a.m. the next day and continued until about 3:00 p.m., when the jury appeared to have reached a verdict. After the foreperson announced the verdict, however, polling of the jurors revealed that it was not unanimous. That is, one of the seven jurors, Juror Nuckolls, stated that she did not agree with the verdict. After conferring with the attorneys, the district judge decided against giving a so-called "Allen charge" or deadlocked jury instruction, but simply repeated the standard "duty to deliberate" instruction which had been given prior to commencement of deliberations, reminding the jurors of their duty to try to reach a unanimous verdict.[2] The jury returned with a unanimous verdict 35 minutes later. The unanimous verdict was identical to the original non-unanimous verdict, demonstrating that Juror Nuckolls had been persuaded during the course of the 35 minutes.
 
 
 32
 Moore recognizes that it is within the trial court's discretion to give a supplemental instruction to the jury. He also acknowledges there is nothing facially coercive about the instruction given. He argues simply that under all the circumstances, and considering the speed with which the jury returned its unanimous verdict after the supplemental charge was given, it is clear that Juror Nuckolls was coerced into abandoning her honest convictions.
 
 
 33
 First of all, the length of time between the giving of the charge and the rendering of the verdict is relevant only after the supplemental charge is found to be coercive, in order to determine whether or not a party was prejudiced by the giving of the coercive charge. Williams v. Parke, 741 F.2d 847, 850 (6th Cir.1984), cert. denied, 470 U.S. 1029 (1985). Otherwise, the speed with which a jury reaches a verdict following the giving of a supplemental charge is not to be considered in determining whether the charge was coercive. Id. Secondly, review of the instruction given reveals that it is evenhanded and not at all coercive. It does not contain any of the defects which have been found to render supplemental instructions improperly coercive. See Williams, supra, 741 F.2d 850-51. As in Williams, the instant instruction was addressed to all of the jurors, not just juror Nuckolls, and expressly allowed for the possibility that the jurors might continue to disagree. Neither was the instruction given under circumstances that suggest coercion. In the absence of any evidence to the contrary, the Court must presume that the jury followed the instructions given. Clarksville-Montgomery County School System, supra, 925 F.2d at 1003.
 
 
 34
 The district court did not err, but acted properly in giving the supplemental charge.
 
 V. IMPROPER POLLING
 
 35
 When the jury was recalled to the courtroom to announce its verdict after advising that it had reached a unanimous verdict, the district judge polled the jury before the verdict was announced in order to confirm that the jurors were unanimous in their judgment. Moore contends the jury should have been polled only after the verdict had been announced and that by polling the jury beforehand, the trial court succeeded in discounting the unanimity of the verdict. Moore argues it is possible the jurors did not know what verdict they were assenting to when they were polled before the verdict was announced.
 
 
 36
 The purpose of polling is to ascertain that each juror approves of the verdict and has not been coerced or induced to concur in a verdict to which he or she does not fully assent. United States v. Miller, 59 F.3d 417, 419 (3rd Cir.1995). Polling gives effect to each juror's right to change his or her mind about the verdict agreed to in the jury room even though the likelihood of such change is remote. Audette v. Isaksen Fishing Corp., 789 F.2d 956, 958 (1st Cir.1986). If the trial court decides to poll the jury at all, it has substantial discretion in determining the manner of polling. Miller, 59 F.3d at 420; Audette, 789 F.2d at 959-60.
 
 
 37
 Typically, of course, jurors are individually polled after the verdict is announced by the foreperson. This procedure is clearly preferable. Yet, we cannot say, under the circumstances of this case, that the district judge abused his discretion by polling the jury beforehand. Just 35 minutes earlier, he had been surprised to learn that an apparently unanimous verdict was not unanimous. By polling the jury before the verdict was announced, he sought merely to ascertain unanimity and avoid further confusion.
 
 
 38
 Moore's contention that his substantial rights were prejudiced is based on groundless speculation. The notion that Juror Nuckolls or any other juror may have misunderstood the verdict assented to is simply implausible in view of the facts that the original non-unanimous verdict and the later unanimous verdict were identical in substance and were separated by only 35 minutes. Thus, even to the extent the polling might be deemed premature, the error was at worst technical and harmless.
 
 VI. SUBSTANTIATION OF DAMAGES AWARD
 
 39
 Having found that plaintiffs were wrongfully discharged in violation of their First Amendment rights, the jury awarded compensatory damages of $30,000 each to Ralph Dunaway and Woodrow Marbry, and $17,000 each to James Butler and Danny Campbell. Plaintiffs' damages consisted essentially of lost wages and benefits. In response to Moore's post-trial motion to set aside the verdict, the trial court upheld all but the Campbell award. The trial court found that Campbell's damages were mitigated by his securing of new employment just four months after discharge and ordered a remittitur, reducing his award to $5,554. The trial court rejected Moore's argument that the other plaintiffs' damages were not sufficiently substantiated. Moore renews the argument.
 
 
 40
 We review the sufficiency of the evidentiary support for the verdict in the light most favorable to plaintiffs-appellees. Coal Resources, Inc. v. Gulf & Western Industries, Inc., 954 F.2d 1263, 1266 (6th Cir.1992). Damages which are remote or speculative are not permitted. Id. "This rule serves to preclude recovery, however, only where the fact of damages is uncertain, i.e., where the damage claimed is not the certain result of the wrong, not where the amount of damage alone is uncertain." Grantham & Mann, Inc. v. American Safety Products, Inc., 831 F.2d 596, 601-02 (6th Cir.1987). "Once the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages." Id., at 602. An award of damages will not be overturned as excessive unless it manifests plain injustice, or is so grossly excessive as to be clearly erroneous. Meyers v. City of Cincinnati, 14 F.3d 1115, 1119 (6th Cir.1994).
 
 
 41
 Review of the present record in the light most favorable to appellees discloses that the existence of damages was certainly established, that the jury was presented adequate evidence upon which to assess damages, and that the damages awarded are not grossly excessive by any means. We find no error.
 
 VII. CONCLUSION
 
 42
 For all the foregoing reasons, we AFFIRM the district court judgment in all respects.
 
 
 
 *
 The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 It necessarily follows that the trial court did err when it reversed its own ruling on the qualified immunity issue. However, because appellees have not raised the issue on appeal, we do not reach it. See Boyd v. Ford Motor Co., 948 F.2d 283, 284 (6th Cir.1991), cert. denied, 503 U.S. 939 (1992) (issues not raised on appeal are deemed abandoned and unreviewable)
 
 
 [2]
 In pertinent part, Judge Todd instructed as follows:
 Members of the jury, it appears from the answers given during the polling of the jury that your verdict is not unanimous. As I previously instructed, the court cannot accept a verdict unless it is unanimous. I must, therefore, ask that you return to the jury room and continue your deliberations. The instructions which I previously gave you will apply. Specifically, I remind you that you should discuss and consider the evidence, listen to the arguments of your fellow jurors, present your individual views, and consult with one another. You should not hesitate to change your views if you are convinced they are erroneous; however, you should not surrender a conscientiously held conviction simply because you may be outnumbered or merely in order to reach a verdict.
 So with that instruction, ladies and gentlemen, I'm going to ask that you go back and try again to reach a unanimous verdict. If all seven of you can agree upon a verdict, then report it to the court. If you cannot agree on a verdict, then don't change your mind just because you are outnumbered, but try to reach a unanimous verdict. Tell me when you do or tell me if you can't.