**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

v.

**Richard Anthony ALOI, Defendant–Appellant, Cross–Appellee.**

Nos. 91–3830, 91–3879.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 3, 1993.

Decided Oct. 29, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 29, 1993.

Joseph P. Schmitz, Asst. U.S. Atty., David A. Sierleja, Cleveland, OH, Sean Connelly (argued and briefed), U.S. Dept. of Justice, Criminal Div., Washington, DC, for plaintiff-appellee cross-appellant.

Edward Marek, Fed. Public Defender, Debra M. Hughes (argued and briefed), Federal Public Defender's Office, Cleveland, OH, Matthew Fortado (briefed), Akron, OH, for defendant-appellant cross-appellee.

Richard Anthony Aloi, pro se.

Before: KEITH and KENNEDY, Circuit Judges, and CONTIE, Senior Circuit Judge.

KENNEDY, Circuit Judge.

In this case, defendant Richard Anthony Aloi appeals his convictions for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1), 773 F.Supp. 55. The government cross-appeals the District Court's refusal to sentence defendant under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), which would have required a fifteen-year sentence. For the reasons set forth below, we affirm defendant's convictions, but vacate defendant's sentence.

## I.

On appeal, defendant raises several issues surrounding his conviction. The relevant facts of the underlying events giving rise to his arrest and conviction will be presented with each issue.

### A. Motion to Suppress

■ Defendant first challenges the denial of his motion to suppress the guns and ammunition found. Defendant was arrested on October 9, 1990 by Sergeant Donald Mollohan of the Springfield Township, Ohio, Police Department. Defendant, who was asleep in his common-law wife's car, in a shopping center parking lot, had drawn the attention of a Rickey Glass. Glass believed that defendant was in need of assistance and flagged down Mollohan. Mollohan approached the car and observed defendant sleeping with an open bottle of beer in his hand. The officer awakened defendant, asked if he was all right and asked for his driver's license. Next, he asked defendant to exit the car and administered field sobriety tests.

While standing outside of the car, Mollohan observed a black vinyl bag on the front seat. Mollohan asked defendant what was in the bag and twice, defendant claimed that there was "nothing important" in the bag. Mollohan testified that he then said: "Well, if there is nothing important, can I look in it?" Defendant replied, "Yes." The bag contained three handguns, ammunition and a woman's scarf.

■ In denying the motion, the District Court found Mollohan's testimony on defendant's consent to the search to be credible and undisputed. The District Court's factual findings will be set aside only for clear error; and its credibility determinations are owed substantial deference due to the trial court's ability to observe the demeanor of the witness. *United States v. Garcia,* 866 F.2d 147, 151–52 (6th Cir.1989). We do not find this conclusion to be clearly erroneous.

### B. Rebuttal Testimony

■ Defendant's next assignment of error is the District Court's decision to allow rebuttal testimony. Defendant claims that the *sole* purpose of introducing this testimony was to emphasize defendant's status as a "convicted felon on parole" to the jury.

Kathy Witzman, defendant's common-law wife, testified that she knew that defendant could not possess firearms because of his previous felony convictions. Witzman also testified that she did not remember defendant's parole officer, James Brown, "saying" or "implying" that "defendant could not even be in a house with firearms." The United States offered Brown's testimony to rebut Witzman's testimony. The entire rebuttal testimony consisted of the following:

Q. Sir, did you explain to Kathy Witzman that Mr. Aloi was not permitted to live in a house where guns were present?

A. Yes.

Q. Sir, did you explain to Kathy Witzman that if Mr. Aloi did live in a house where guns were kept, Mr. Aloi would be in violation?

A. Yes.

Q. Did you explain to Kathy Witzman the consequences of such a violation?

A. Yes.

Q. Did you ask her if she understood that information?

A. Yes.

Q. And what did she respond?

A. That she understood.

"Determining the use and scope of rebuttal evidence lies within the broad discretion of the district court." *United States v. Levy,* 904 F.2d 1026, 1031 (6th Cir.1990) (citing *United States v. Goodwin,* 770 F.2d 631, 638 (7th Cir.1985), *cert. denied,* 474 U.S. 1084, 106 S.Ct. 858, 88 L.Ed.2d 897 (1986)), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1060 (1991). Brown's testimony served to contradict Witzman's earlier testimony. We find no abuse of discretion.

### C. Voir Dire

Defense counsel made the following request of the District Court during voir dire of the jury:

MR. FORTADO: I would like the Court to instruct them or inquire of them as to their knowledge of the Defendant's right not to testify, not to incriminate.

THE COURT: I don't do that. I do it throughout the trial every chance I get. It's a very strong instruction at the end.

Defendant argues that he was entitled to have this specific question asked during voir

dire. He also complains that the court did not remind the jury during the trial that defendant was not required to testify. The following instruction was given by the court to the jury:

> The Defendant is presumed by the law to be innocent. The law does not require a Defendant to prove his innocence or produce any evidence at all, and no inference whatever may be drawn from the election of the Defendant not to testify. The Government has the burden of proving him guilty beyond a reasonable doubt of each and every essential element of the crime charged and if it fails to do so you must acquit him.

■ Federal trial judges have broad discretion in determining what questions to ask during voir dire. *Rosales–Lopez v. United States,* 451 U.S. 182, 189, 101 S.Ct. 1629, 1635, 68 L.Ed.2d 22 (1981). "Judges need not use every question submitted by counsel; they need only use those to which an anticipated response would afford the basis for a challenge for cause." *United States v. Fish,* 928 F.2d 185, 186 (6th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991).

In support of his position, defendant cites *United States v. Blount,* 479 F.2d 650 (6th Cir.1973). In *Blount,* a divided panel reversed a defendant's conviction because the trial court refused the defendant's request to ask if the prospective jurors accepted the bedrock principle that a defendant is innocent until proven guilty. *See also United States v. Hill,* 738 F.2d 152, 153 (6th Cir. 1984), (presumption of innocence and government's burden of proof beyond a reasonable doubt). "The primary purpose of the voir dire of jurors is to make possible the empanelling of an impartial jury through questions that permit the intelligent exercise of challenges by counsel." *Blount,* 479 F.2d at 651 (citing Wright, 2 *Federal Practice and Procedure,* ¶ 382 (1969)). The Court believed that the failure to honor this request made it impossible to empanel an impartial jury.

The District Court did question the venire about the presumption of innocence afforded a criminal defendant.

THE COURT: Do any of you believe that the Defendant, Mr. Aloi, has been indicted, that it is more likely that he is guilty than that he is not guilty? Do any of you believe the fact that an individual has been indicted makes it more likely that he is guilty than that he is not guilty?

I am glad to see that everybody remembers their high school Civics class. An indictment is merely a means of informing a person of a crime he has been charged. It is not evidence and does not indicate [anything] other than a charge.

The court also asked the venire and the jury whether anyone would have a problem abiding by the court's instructions to the jury; no person answered in the affirmative.

■ The issue here is whether this Court will extend the principle of *Blount* to the facts of this case, where the requested question dealt not with the presumption of innocence, but with the right of a criminal defendant not to testify against himself. The Supreme Court has held that the failure of a trial court "to limit the jurors' speculation on the meaning of" a defendant's silence when he chooses not to testify, by giving a requested limiting jury instruction, "exacts an impermissible toll of the full and free exercise" of the Fifth Amendment privilege against self-incrimination. *Carter v. Kentucky,* 450 U.S. 288, 305, 101 S.Ct. 1112, 1121, 67 L.Ed.2d 241 (1981). The Court did not suggest that the subject must also be covered in voir dire. The specific question asked here, namely, the jurors' "knowledge" of a defendant's right not to testify, would not itself be a ground for a challenge for cause. Only if after being instructed that the defendant's failure to testify could not be held against him and the refusal or inability to comply with that instruction, could they be challenged for cause. We hold that the failure of the District Court to honor the request did not create the risk of empaneling a biased jury, given the court's voir dire questions and jury instructions about the presumption of innocence and its instruction that "no inference whatever may be drawn from the election of the defendant not to testify."

## D. Sufficiency of the Evidence

As a final basis for attacking his convictions, defendant raises a sufficiency of the evidence challenge. This claim has no merit. It was stipulated that defendant was a convicted felon and that the gun and ammunition traveled across state lines, and there was ample evidence that defendant knew of the presence of the guns in the car.

## II. Sentence Enhancement

Recently, this Court sitting en banc, decided the question of whether a defendant may challenge the use of prior state court convictions for purposes of sentence enhancement under the Sentencing Guidelines on the grounds that the convictions are invalid. *United States v. McGlocklin,* 8 F.3d 1037, 1045 (6th Cir.1993) (en banc). A majority of the Court has decided that a district court has broad discretion to entertain such challenges at sentencing.

To challenge the proposed use of a prior conviction for sentencing purposes, the defendant must first comply with the procedural requirements for objecting to the conviction's inclusion in the criminal history score. The defendant also must state specifically the grounds claimed for the prior conviction's constitutional invalidity in his initial objection and "the anticipated means by which proof of invalidity will be attempted—whether by documentary evidence, including state court records, testimonial evidence, or combination—with an estimate of the process and the time needed to obtain the required evidence." [*United States v. Jones,* 977 F.2d 105, 110 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1335, 122 L.Ed.2d 719 (1993) (*Jones II* ) ]. *See also [United States v. Canales,* 960 F.2d 1311, 1316 (5th Cir. 1992) ] (the district court is free to consider a number of factors including scope of inquiry, whether issue is contested, and if invalidity is apparent from record). An example of a challenge that likely would be entertained would be a challenge to a previously unchallenged felony conviction where the defendant was not represented by counsel, counsel was not validly waived, and court records or transcripts are available documenting the facts.

In the present case, defendant opposed the government's motion for enhancement under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA") on the grounds that two of his prior convictions were invalid. We believe that the District Court acted within its discretion when it entertained defendant's challenge at sentencing.

ACCA prescribes a mandatory fifteen-year sentence for firearm offenders with at least three prior convictions for violent felonies or serious drug offenses. The government relied on four State of Ohio convictions as qualifying ACCA predicates: a 1967 armed robbery conviction, following a jury trial; and three 1979 convictions, based on guilty pleas to separate counts of a single indictment for two counts of aggravated burglary and a count of felonious assault. The District Court held that the two 1979 convictions for aggravated burglary counted only as one offense because they constituted a crime spree. The government does not challenge this finding on appeal.

The District Court also held that the 1967 conviction for armed robbery was unconstitutionally obtained, and could not be counted under ACCA. First, the court concluded that the Ohio court that tried defendant's 1967 armed robbery case (the "Ohio court") gave a coercive *Allen* charge to the jury. Second, the court found that defendant had not been advised, and was unaware of his right to appeal the conviction.

The government bears the initial burden of establishing the existence of the prior convictions. Here, the government satisfied its burden by producing certified records of the convictions. The records further indicate that defendant was represented by retained counsel throughout the proceedings. The burden then shifts to the defendant to prove that his convictions were in fact unconstitutionally obtained.

## A. The *Allen* Charge

Defendant argues that the Ohio court improperly directed the jury to return a verdict, after the jury twice reported a deadlock.

There is no trial transcript or court reporter's notes available. The trial judge, Judge Emmons, is deceased. The prosecutor and defense counsel are living, but do not remember the details of Aloi's trial, which took place over twenty years ago.

The only documentary evidence available to the District Court was a Motion for a New Trial filed by defendant's counsel following the 1967 conviction. The two-page motion requested a new trial on several grounds, including the allegation that Judge Emmons coerced the jury to return a verdict. The motion further alleged that the judge "admonished the jury upon sending them back for their final deliberation that the State of Ohio was being put to great expense in continuing [the] trial and they should reach a verdict." The District Court attached great weight to the allegations in the motion "since it is unlikely that an attorney would jeopardize his standing as a member of the bar by misstating facts to the very judge who had presided at trial only a few days before, the late Honorable Claude V.C. Emmons." Based solely on the content of the motion, the District Court found that Judge Emmons had improperly emphasized the cost of a new trial to the state, and not the cost to both sides, if the jury failed to reach a verdict.

Defendant also testified at sentencing about the judge's exchange with the jury. Defendant remembered that because the jury was out for five days, the judge told the jurors that they should be home since it was Christmas. However, the records indicate that the jury deliberated for only part of two days—retiring to deliberate at 2:00 p.m. on December 5, 1967, and returning with their verdict at 3:00 p.m. on December 6, 1967. The District Court rejected defendant's testimony.

■ We believe that the evidence credited at the sentencing hearing falls short of establishing that defendant's conviction was unconstitutionally obtained. As the District Court recognized, a trial court may properly encourage a deadlocked jury to continue its deliberations and attempt to reach a verdict. *Allen v. United States,* 164 U.S. 492, 501–02, 17 S.Ct. 154, 157, 41 L.Ed. 528 (1896). A charge that strays too far from the charge approved in *Allen* will rise to the level of a constitutional violation only if "in its context and under all the circumstances, [the charge] . . . was coercive." *Williams v. Parke,* 741 F.2d 847, 850 (6th Cir.1984) (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965)), *cert. denied,* 470 U.S. 1029, 105 S.Ct. 1399, 84 L.Ed.2d 787 (1985). The District Court lacked the information needed to determine whether Judge Emmons' charge to the jury was coercive. Even if the reference to the financial burden the state would shoulder if the jury could not agree was improper, that is not the end of the inquiry. A court reviewing a claim that the jury was coerced must "consider the supplemental charge given by the trial court 'in its context and under all circumstances.'" *Lowenfield v. Phelps,* 484 U.S. 231, 237, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988) (quoting *Jenkins,* 380 U.S. at 446, 85 S.Ct. at 1060). In *United States v. Scott,* 547 F.2d 334, 337 (6th Cir. 1977), we stated that "the reminder that no juror should merely acquiesce in the majority opinion is . . . one of the most important parts of the *Allen* charge." It is impossible to review defendant's claim that the judge's instruction was unduly coercive with the limited record available. There is no documentation of the *full* charge "in its context and under all circumstances." The District Court erred in concluding that defendant had proven that the 1967 conviction was unconstitutional by reason of the *Allen* charge.

**B. Advice to Appeal**

■ Defendant also argued that the 1967 conviction was invalid because he was not advised of his appellate rights. The District Court found that defendant had established that he was neither advised of his right to appeal and to counsel on appeal, nor was he aware of these rights at the time of his conviction. For this reason, the District Court found the 1967 conviction was constitutionally infirm and could not be used for enhancement purposes under ACCA.

It has long been recognized that there is no federal constitutional right to an appeal. *Abney v. United States,* 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977) (cit-

ing *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894)); *See also, Jones v. Barnes,* 463 U.S. 745, 750, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). The Supreme Court has held that once a right to appeal has been statutorily created, that right must be made available to all regardless of one's ability to pay. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). This principle of equal protection was later extended by the Court to include the right to assistance of counsel on appeal as of right. *Swenson v. Bosler,* 386 U.S. 258, 259, 87 S.Ct. 996, 997, 18 L.Ed.2d 33 (1967) (per curiam). An indigent defendant's right to appeal and right to counsel on appeal will not be deemed waived even in the absence of a request for appointment of appellate counsel. *Id.* at 260, 87 S.Ct. at 997–98.

In the present case, the District Court found that defendant did not knowingly or intelligently waive his right to appeal or his right to counsel on appeal.[1] The District Court found defendant's testimony that he was unaware of his right to appeal to be credible. Defendant introduced affidavits of his trial counsel, Bernard I. Rosen, and the prosecuting attorney, Edwin C. Pierce. The affiants both stated that they had no independent recollection of whether defendant had been advised of his right to appeal by the Ohio court or anyone else. The District Court did not attach significance to the fact that Rosen's affidavit was silent on whether he himself advised defendant of his right to appeal. Defendant's status as a non-indigent with retained counsel did not change the District Court's conclusion that defendant did not knowingly waive his appellate rights. We believe, however, that defendant's non-indigent status is an important and determinative fact.

In *United States ex rel. Smith v. McMann,* 417 F.2d 648, 654 (2d Cir.1969), *cert. denied,* 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105 (1970), the Second Circuit held that the trial court must advise convicted defendants of their appellate rights if the rights guaranteed in *Douglas* are to be afforded protection. *See also Henderson v. Cardwell,* 426 F.2d

150, 154 (6th Cir.1970), ("the failure of the court to notify a convicted defendant of his right to appeal in forma pauperis was state action in denial of a federal constitutional right" (citing *McMann* with approval)). Presumably, these rights are worthless to a defendant who does not know they are available to him. The advice is necessary to guarantee that poverty does not make it more difficult for an indigent convicted defendant to engage the appellate process than for a convicted defendant with money.

Beginning with *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Court recognized that those with money could avail themselves of the judicial appellate process more effectively then those without the same resources. It held that states may not grant appellate review in a manner that discriminates against convicted defendants on the basis of their ability to pay.

> In criminal trials a State can no more discriminate on account of poverty than on account of religion race, or color. Plainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial.

*Id.* at 17–18, 76 S.Ct. at 590. The Supreme Court reaffirmed this principle in *Douglas* and *Swenson.* The *Swenson* court also held that waiver of these appellate rights will not be inferred from the absence of a request for counsel where it is apparent that the defendant is *indigent* and desires an appeal. *Id.* 386 U.S. at 260, 87 S.Ct. at 997–98. (emphasis added).

The right to advice about one's appellate rights arises from the equal protection principle established in *Griffin, Douglas,* and *Swenson* that prohibits discrimination on account of poverty. The Ohio court was under no constitutional obligation to advise a *non-indigent* defendant, *represented by retained counsel,* of his right to appeal in forma pauperis in 1967.

---

1. Under Ohio law in 1967, individuals were provided an appeal as of right from criminal convic-

tions. Former O.R.C. § 2953.05 (repealed 1987).

### III.

Defendant's convictions are **AFFIRMED.** Defendant's sentence is **VACATED** and the case is **REMANDED** for resentencing.

CONTIE, Senior Circuit Judge, concurring.

Although I am compelled to concur in the result in this case, I do so with great reluctance. The facts simply state that a good samaritan saw the defendant slumped over in a car in a parking lot of a shopping area and contacted an officer to provide assistance to the defendant. The officer found the defendant had fallen asleep and found in the car a can of beer and several hand guns in a bag. The firearms possession was illegal because the defendant was a felon whose prior convictions occurred in 1967 and 1979. There was no underlying crime in regard to his possession of the firearms. The firearms were not possessed in conjunction with any criminal act.

The statute provides that Mr. Aloi must be sentenced to a mandatory 15 years in prison. There is no provision in Title 18 U.S.C. § 924(e)(1) for reduction of a sentence where the current possession of a firearm by a convicted felon is not in conjunction with an underlying crime. There is no question that Mr. Aloi committed the crime of illegal possession of firearms when he had a felony record.

The fault I find is in the severity of the mandatory sentence, which I find unconscionable. My complaint is with the statute which fails to leave a window open for non-severe violations, but instead imposes a harsh mandatory sentence. I cannot feel proud of my concurrence to this harsh sentence which is mandated by the statute. I cannot feel confident that I am truly administering justice by my approval of the decision of the majority. I further hope that we are not sending wrong signals to good samaritans.

The mandatory minimum sentences, which have been enacted in statutes by Congress and have been directed by the sentencing guidelines in other situations, were obviously created with the idealistic principle to impose more harsh sentences on repeat offenders, but the idealistic concept has created some situations where the sentences are unconscionable, unrealistic, and unjustified. An individual, whose prior felonies occurred 14 and 26 years ago, who illegally possessed several handguns and did not commit any underlying crime, should not be sentenced to a mandatory 15 years. However, I cannot ignore the mandatory provisions of Title 18 U.S.C. § 924, but I cannot convince myself that our determination is in conformity with the principles of fair and proper administration of justice.