**File Name: 07a0599n.06**
**Filed: August 21, 2007**

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 06-3013**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| *Plaintiff-Appellee,* | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| **AARON HERNANDEZ,** | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| *Defendant-Appellant* | ) | |
| | ) | |

**Before: CLAY and SUTTON, Circuit Judges; and GREER, District  Judge.**[*]

**GREER, District Judge**.   Defendant, Aaron Hernandez, appeals his conviction and

sentence.  Hernandez was convicted of armed bank robbery in violation of 18 U.S.C. § 2113(d), and

was sentenced by the district court to a term of imprisonment of 78 months and a three year term of

supervised release.  For the reasons set forth below, we **AFFIRM** Hernandez's conviction and

sentence.

## I.  FACTUAL AND PROCEDURAL  BACKGROUND

At approximately 10:45 a.m. on April 20, 2005, Hernandez entered a branch of Sky

Bank in Campbell, Ohio, handed a printed note to a bank employee and was then escorted to the desk

---

[*] The Honorable J. Ronnie Greer, United States District Judge for the Eastern District of Tennessee, sitting by designation.

of the bank branch manager.  The note stated:

> Dear Bank Mananger [sic],
>
> Be absolutely Quiet and do not arouse any attention to yourself.  The young Love Bird in front of you is my Hostage I have armed Him with Two Highly Sensitive Remote Detonated Explosives, you and the Little Love Bird have till 11:00 am to comply with my Demands and if you Decide not to I will with no hesitation Detonate both Explosives.  My Demands are that you act absolutely normal as if you are cashing out his account you will then find a breifcase [sic] or a suitable container fit $50,000 – $100,000 in unmarked, untracible [sic] Bills (no Explosive ink markers, tracking devices, or turned on cell Phones).  I know how things work in a bank so do not atempt [sic] anything just cooperate if you value your life.  You with [sic] then tell him to have a nice day and appoligize [sic] for any incovenience [sic].
>
> Sincerely yours.

While seated at the desk of the branch manager, Hernandez said "what do I do. What do I do.  I'm scared" and lifted his shirt to expose boxes the size of drill bit cases duct taped around his mid-section.  The branch manager could not tell what the boxes were and believed they were explosives as represented in the note.  Hernandez also handed the branch manager his wallet containing his drivers' license and asked him to give it to his wife or daughter.[1]

The branch manager instructed the bank's head teller to access the bank's vault and collect the money Hernandez was demanding. Forty-four thousand dollars were placed in a white canvas bag and given to Hernandez.  He then walked out of the bank and proceeded "casually" through the bank's parking lot to his car.  Hernandez drove off alone in an easterly direction.

---

[1]  According to the presentence report ("PSR"), Hernandez has neither.

The bank's alarm was activated after Hernandez left the bank and Campbell Police received the alarm at approximately 10:50 a.m. At 11:29 a.m., a 911 dispatcher in Lawrence County, Pennsylvania, received a call from a person identifying himself as Hernandez, who claimed to have been abducted at gun point by an unknown assailant who had outfitted him with explosives and threatened to detonate them if Hernandez did not rob Sky Bank. Police officers responded to the scene of the call and located Hernandez and his car. No explosives, simulated explosives or money from the bank was found.

Hernandez was interviewed by agents of the Federal Bureau of Investigation ("FBI") and repeated the story he had given to the dispatcher. Hernandez claimed to have been abducted at gun point by an unknown white male who forced Hernandez to type the note presented at the bank, outfitted him with what Hernandez believed to be a bomb and threatened to detonate it if Hernandez did not rob the bank and return the proceeds to the abductor. After the robbery, according to Hernandez, he met his abductor at a remote quarry near Hillsdale, Pennsylvania using a map left in his car by his abductor. The unknown white male "grabbed the money," removed the "bomb" and drove off in a Ford van. Hernandez then went to a nearby beverage store to call 911.

Hernandez was re-interviewed by the FBI after he was unable to pass a polygraph examination.[2] His second version of the events of April 20 differed significantly from the original. He now claimed that he knew the alleged abductor as "J", "Jay" or "Rush", that it was his idea to use the demand note, which he composed, and that he knew the device strapped to his mid-section was

---

[2] Evidence of the polygraph examination results was not admitted at trial.

not a bomb but consisted of empty drill bit cases. Hernandez also admitted that it was his idea to simulate a bomb for use in the robbery. He continued to insist, however, that his abductor had threatened to kill him or harm his family if he did not rob the bank. He could not provide any information about "J", "Jay" or "Rush".

Hernandez was indicted on May 17, 2005, and charged with the use of force, violence or intimidation to rob Sky Bank, in violation of 18 U.S.C. § 2113(a). He was also charged, under 18 U.S.C. § 2113(d), for assaulting and putting in jeopardy the lives of bank employees and others by means of a dangerous weapon or device.

Prior to trial, Hernandez moved the court to permit his lawyer to conduct *voir dire* or, alternatively, submit questions to be asked of the prospective jurors. Among the questions submitted were fourteen questions related to defendant's duress defense. The motion was denied by the court citing concerns that the "questions would actually create confusion in the jury's mind about the actual standards for the defense." The district court did inform the prospective jurors that Hernandez would claim that he "was acting under a threat and under duress." The trial of the case began on October 20, 2005. At the close of the government's proof, Hernandez moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on grounds that the evidence was insufficient to support a conviction. The district court denied the motion and Hernandez was convicted of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d).

After Hernandez's conviction, a PSR was prepared. The PSR calculated a base offense level of 20 which was increased by two levels pursuant to USSG § 2B3.1(b)(1) because property of a financial institution was taken; increased three levels pursuant to USSG § 2B3.1(b)(2)(E) because

4

a dangerous weapon was brandished or possessed; increased one level pursuant to USSG §2B3.1(b)(7)(B) because of the loss to the financial institution was more than ten thousand ($10,000) dollars, but not more than fifty thousand ($50,000) dollars; and increased by two levels pursuant to USSG § 3C1.1 because Hernandez willfully obstructed or impeded the investigation or prosecution of the case by his false statements to the FBI. This resulted in a total offense level of 28. Hernandez had no prior record of juvenile adjudications or adult criminal convictions, resulting in a criminal history score of zero and a criminal history category I. This resulted in a sentencing guideline imprisonment range of 78 to 97 months.

Hernandez objected to the adjustment for obstruction of justice. Over Hernandez's objection the district court adopted the PSR calculation and sentenced Hernandez to a term of imprisonment of 78 months, the low end of the advisory guidelines range. Hernandez has timely appealed both his conviction and sentence.

## II.  ANALYSIS

On appeal, Hernandez raises several issues related to his trial and sentencing. The issues on appeal are:  (i) whether the district court erred in denying the requested *voir dire* on the duress defense; (ii) whether there is sufficient evidence to support Hernandez's conviction under 18 U.S.C. § 2113(d); (iii) whether the district court properly applied the obstruction of justice enhancement pursuant to USSG § 3C1.1; and (iv) whether Hernandez's sentence was procedurally reasonable. We address each of these issues in turn.

### A.    *Voir Dire*

Coercion or duress can excuse a crime, but only if five factors are established. The

elements of the defense are:

> 1. that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> 2. that the defendant has not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> 3. that the defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm;
>
> 4. that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm;
>
> 5. that defendant did not maintain the illegal conduct any longer than absolutely necessary.

*United States v. Riffe*, 28 F.3d 565, 569 (6th Cir. 1994), *abrogated on other grounds* by *Dixon v. United States*, 126 S. Ct. 2437 (2006).

Hernandez relied on a coercion/duress defense in this case and requested that prospective jurors be questioned during *voir dire* regarding his defense and submitted fourteen proposed questions to the district court. The questions sought information about whether the prospective jurors had ever heard of the defense of coercion/duress or of anyone being forced to commit a crime; prospective jurors' beliefs about whether a person should be found innocent of a crime they were forced to commit or whether they believed that person "at least partially guilty" or otherwise held accountable; whether they believed someone could be forced into committing a crime; their feelings about whether fear of harm or threat to the lives of others could cause a person to

commit an unlawful act; whether any of the prospective jurors had been coerced into doing something they did not want to do; whether they could keep an open mind throughout the trial about the defense; whether any doubt about the defense depended upon the seriousness of the crime; and whether they feel "put out" by being called to be a juror in a case where the defense is duress.

After reviewing the proposed questions, the district judge did not permit the *voir dire* because of the possibility of juror confusion over the actual standards for the defense and decided it better to "reserve that question for the Court's ultimate instructions to the jury . " The district court did inform the prospective jurors of Hernandez's reliance on the duress defense. During jury selection, the court emphasized the need for jurors to keep an open mind, base their decisions in the case only on the evidence presented in the case and their obligation to follow the court's instructions on the law. The court thoroughly explained the presumption of innocence and the government's burden of proof and carefully examined the prospective jurors for any bias or prejudice which might interfere with their ability to be fair and impartial.

We find Hernandez's argument to be without merit. "District judges have a great deal of discretion to determine the questions to ask potential jurors during *voir dire*." *United States v. Martinez*, 981 F.2d 867, 870 (6th Cir. 1992). The district court's determination is reviewed under an abuse of discretion standard. *Id.* As the district court found, all of the questions proposed by the defendant either asked the prospective jurors for irrelevant information, misstated or did not completely state the elements of the claimed defense, or covered areas otherwise adequately covered by the permitted *voir dire*. There was no abuse of discretion by the district court.

The defendant's reliance on *United States v. Blount*, 479 F.2d 650 (6th Cir. 1973) is

7

misplaced. In *Blount*, a panel of this court held it reversible error for the district court to refuse to ask prospective jurors during *voir dire* if "they could accept the proposition of law that a defendant is presumed to be innocent, has no burden to establish his innocence, and is clothed throughout the trial with this presumption." *Id.* at 651. The Sixth Circuit has refused, however, to extend the holding of *Blount* to any other areas of inquiry and later held, in *United States v. Aloi*, 9 F.3d 438 (6th Cir. 1993), that the district court's refusal to question prospective jurors concerning "a defendant's right not to testify" was not a reversible abuse of discretion. *Id.* at 440-41.

The *Aloi* court referred to the presumption of innocence as a bedrock constitutional principle upon which jurors should be questioned. *Id.* at 441. While the defendant does not argue that the affirmative defense of duress rises to the level of a bedrock constitutional principle or that *voir dire* must be permitted on any affirmative defense, including duress, he apparently does contend that *voir dire* must be permitted when the affirmative defense is "the only serious issue in the case." (Appellant's Reply Brief at 2). Hernandez cites no authority in support of his position and we decline to adopt such a rule. In short, the district court properly exercised its discretion in refusing the requested *voir dire*.

### B.       **Sufficiency of the Evidence**

An essential element of an offense under 18 U.S.C. §§ 2113(a) and (d) is the use of "a dangerous weapon or device." Hernandez contends that § 2113(d) requires use of an actual dangerous weapon or device and the statute is not violated where the defendant uses a device designed to look like a real or actual bomb, but where the devise was not an actual bomb. In other words, Hernandez argues that his use of a fake bomb does not amount to a violation of the statute.

8

"Accordingly", he argues, "there is no evidence supporting an essential element of a conviction under § 2113(d), and that conviction must be reversed." (Appellant's Brief at 20).

As an initial matter, the government contends that Hernandez has waived his right to argue that the device used by him in the bank robbery was not "a dangerous weapon or device" because he "at no time argued below that he could not be convicted of violating § 2113(d) because the device used in the robbery was not a real or actual bomb." (Appellee's Brief at 28). It is settled law that a challenge to the sufficiency of the evidence is waived unless raised in a motion pursuant to Federal Rule of Criminal Procedure 29 at the close of the government's case or at the close of all evidence. *United States v. Chance*, 306 F.3d 356, 368 (6th Cir. 2002). The government acknowledges that Hernandez made a Rule 29 motion but argues that he did not specifically address this issue in the motion. The record here establishes that Hernandez's counsel, at the close of the government's proof, made a very general and brief motion for judgment of acquittal on grounds, among others, of "a serious insufficiency of the evidence." The government responded to the oral motion with three sentences. The district judge in ruling on the motion found the government "has established all of the elements of the bank robbery offense . . . . All of the elements of bank robbery when you view it, armed bank robbery, have been established." Clearly, the district court interpreted defendant's motion to be a general Rule 29 motion addressing all issues of sufficiency of the evidence, *see Chance,* 306 F.3d at 371, and we are unwilling, on the record before us, to find that Hernandez has waived his right to raise this issue.

Hernandez's argument, however, fails on the merits. Hernandez acknowledges "that the bulk of the case law . . . is against him." (Appellant's Brief at 23). Notably, Hernandez cites no

case law from this or any other circuit to support his position. Hernandez's position is foreclosed by

*McLaughlin v. United States*, 476 U.S. 16 (1986), and existing case law from this circuit. In

*McLaughlin*, the Supreme Court found that an unloaded gun is a "dangerous weapon" within the

meaning of § 2113(d). The court explained its holding as follows:

> First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause great harm when used as a bludgeon.

*McLaughlin*, 476 U.S. at 17-18 (footnote omitted).

Applying the *McLaughlin* rationale, we reach the same result in this case. Like a gun,

a bomb is a "typically and characteristically dangerous" weapon or device and "the law reasonably

may presume that such an article is always dangerous even though it may not be armed at a particular

time or place." *Id.* at 17. Second, the display of a bomb, like a gun, "instills fear in the average

citizen; as a consequence, it creates an immediate danger that a violent response will ensue." *Id.* at

17-18.

In accord with *McLaughlin* is this Court's decision in *United States v. Beasley*, 438

F.2d 1279 (6th Cir. 1971). In *Beasley*, this Court held that a purported bomb which was not actually

capable of inflicting physical harm satisfies the requirement of § 2113(d):

> . . . even though inert, this device put life in danger as surely as a weapon could. [citation omitted] The threat to use any apparently deadly device is far more likely to lead to retaliation by deadly force, either by the victim, by rescuers, by the police, and, in return, by the

robber, th[a]n assaultive language.

*Id.* at 1283. Likewise, in *United States v. Medved*, 905 F.2d 935, 940 (6th Cir. 1990), this Court, applying *McLaughlin*, held that a toy gun constitutes "a dangerous weapon or device" which places "people's lives in jeopardy" within the meaning of § 2113(d). *See also United States v. McCall*, 85 F.3d 1193, 1197 (6th Cir. 1996) (toy gun may be considered a "dangerous weapon or device" under § 2113(d)).

Other circuits have unanimously come to the same conclusion. *See United States v. Zamora*, 222 F.3d 756, 767 (10th Cir. 2000) ("fake bomb, as a matter of law, may constitute a dangerous weapon, regardless of its actual capabilities, when a victim confronted with it is placed in reasonable expectation of danger") (quoting *United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir. 1990)); *United States v. Hargrove*, 201 F.3d 966, 968 n.2 (7th Cir. 2000) (toy gun constitutes a "dangerous weapon" under § 2113(d) so long as it is displayed during robbery); *United States v. Beckett*, 208 F.3d 140, 152 (3d Cir. 2000) (hoax bombs qualified as "dangerous weapons" for purposes of armed bank robbery statute); *United States v. Hamrick*, 43 F.3d 877, 880-84 (4th Cir. 1995) (*en banc*) (dysfunctional bomb constitutes a "dangerous weapon" under 18 U.S.C. § 2113(d)); *United States v. Martinez-Jimenez*, 864 F.2d 664, 666 (9th Cir. 1989) (a toy which resembles a real gun may constitute a "dangerous weapon or device" which places peoples' lives "in jeopardy" within the meaning of § 2113(d)); *United States v. Marx*, 485 F.2d 1179, 1185 (10th Cir. 1973) (fake bomb constitutes a "dangerous weapon" under § 2113(d) since it places victim in reasonable expectation of death or serious bodily injury); *United States v. Cooper*, 462 F.2d 1343, 1344-45 (5th Cir. 1972) (simulated bomb is a "dangerous weapon" under § 2113(d) as device "clearly puts life in jeopardy"

and may be used to assault victims).

Therefore, the evidence on this issue is clearly sufficient and Hernandez's conviction for armed bank robbery is upheld.

### C.       The Sentencing Enhancement for Obstruction of Justice

In reviewing a district court's application of the obstruction enhancement under USSG § 3C1.1 for purposes of determining Hernandez's advisory guidelines range for imprisonment, this Court reviews the district court's factual determinations for clear error and its determination that specific conduct constituted obstruction of justice is reviewed *de novo*. *United States v. Camejo*, 333 F.3d 669, 674-75 (6th Cir. 2003). Section 3C1.1 of the Sentencing Guidelines provides:

> If (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense, increase the offense level by **2** levels.

*Id.*

Application Note 3 to § 3C1.1 recognizes that "[o]bstructive conduct can vary widely in nature, degree of planning, and seriousness." Application Note 4 sets forth a "non-exhaustive list of examples of the types of conduct to which" § 3C1.1 is intended to apply. Among the examples is "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense." USSG § 3C1.1, Appl. Note 4(g). Application Note 5 provides that "making false statements, not under oath, to law enforcement officers" is not a type of conduct to which the enhancement is intended to apply "unless Application Note 4(g) above applies." USSG § 3C1.1, Appl. Note 5(b).

Hernandez argues that his false statements to law enforcement officers not only did not significantly obstruct or impede the investigation or prosecution of the robbery of Sky Bank, but "[i]f anything, the government was *assisted*, not impeded" by Hernandez's statements because most of the evidence presented at trial consisted of his own statements introduced against him. (Appellant's Brief at 26). Hernandez's argument misses the point.

The record in this case clearly establishes that Hernandez's false statements to the FBI did significantly impede and delay the investigation. The FBI was required, by necessity, to assume the truth of Hernandez's statements that another dangerous bank robber was at large. The record establishes that the FBI attempted, without success, to identify and locate the person described by Hernandez. Significant efforts were undertaken by the FBI through the research of public records and inquires of other law enforcement personnel. The FBI's efforts to locate the alleged abductor continued for nearly a month. Hernandez relied upon his duress defense at trial and made considerable effort to prove that this unknown abductor did in fact exist. All of this required considerable investigation and required the United States to meet the raised defense at trial. Hernandez's challenge to the district court's two level adjustment pursuant to USSG § 3C1.1 is, therefore, without merit.

### D.     The Procedural Reasonableness of Hernandez's Sentence

This court reviews sentences under a reasonableness standard. *Rita v. United States*, 127 S. Ct. 2456, 2462 (2007); *United States v. Booker*, 543 U.S. 220, 262-263 (2005); *United States v. Harris*, 397 F.3d 404, 409 (6th Cir. 2005); *United States v. Cage*, 458 F.3d 537, 540 (6th Cir. 2006). In *Booker*, the Supreme Court held that the sentencing guidelines, which were previously

mandatory, are now only advisory. 543 U.S. at 245. Accordingly, "a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [18 U.S.C. §] 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

We review sentences for both procedural reasonableness and substantive reasonableness. *Id.* "A sentence may be procedurally unreasonable if the district judge fails to consider the applicable Guidelines range or neglects to consider the other factors listed in 18 U.S.C. § 3553(a), and instead simply selects what the judge deems an appropriate sentence without such required consideration." *Id.* (internal quotation marks and citation omitted). In addition, a sentence may be substantively unreasonable "when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to a pertinent factor." *Id.* (brackets, internal quotation marks and citation omitted).

Hernandez contends that the district court failed to utilize a "proper legal framework" in determining his sentence and erroneously treated the sentencing guidelines as mandatory, thus rendering his sentence "procedurally unreasonable." (Appellant's Brief at 33-38) Hernandez complains that the district court improperly used a "three-step analysis" in determining his sentence, felt itself constrained to sentence within the advisory guideline range and considered the factors listed under 18 U.S.C. § 3553(a) only in determining where within the guideline range to sentence Hernandez.

A sentence is procedurally unreasonable when the district judge considers the advisory guideline range to be mandatory and neglects to consider the factors listed in 18 U.S.C. § 3553(a) and

14

where the district court fails to state his reasons for the sentence imposed. Hernandez points to a statement made by the district court that "[t]he only question for me, I believe, under 18 U.S.C. § 3553(a) is where *within the Guideline range* to put this Defendant." Hernandez's argument, however, takes the district court's statement out of context and ignores the rest of the district court's analysis.

The sentencing in this case took place shortly after the Supreme Court's *Booker* decision. The district court outlined a three step analysis for its post-*Booker* sentencing procedures. "The first step in the post-*Booker* sentencing process," according to the district court, "is for the court to conduct a guideline analysis without considering any departures to determine what the Advisory Guidelines would call for." The district court further stated that "[t]he second step is to determine whether there is any guideline-based departure, meaning a departure within the authority of the guidelines that would be appropriate in this case" and the "third step in the process" is "to determine whether these resulting Guideline ranges, the 78 to 97 month custody range, presents the Court with reasonable sentencing options for this Defendant in these circumstances. And if so, where within that Guideline range is the most reasonable sentencing option for this Defendant in these circumstances; or if not, where else would be the most appropriate sentence for this Defendant." The district court further acknowledged that, in reaching its conclusion, it was to consider all of the factors under 18 U.S.C. § 3553(a).

The record in this case makes it clear that the district court was fully aware of the advisory nature of the sentencing guidelines and of its obligation to consider the factors set forth in 18 U.S.C. § 3553(a) in determining "a sentence sufficient, but not greater than, necessary, to [reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

15

offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."] 18 U.S.C. § 3553(a). Although the district court "need not explicitly reference each of the § 3553(a) factors" in imposing sentence, "there must still be sufficient evidence in the record to affirmatively demonstrate the court's consideration" of those factors. *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006). While the district court here did not engage in a "ritual incantation" of the statutory factors, the court did provide a sufficiently clear explanation for its sentence. *United States v. Davis*, 458 F.3d 505, 510 (6th Cir. 2006). The record makes clear the § 3553(a) factors which the court considered to be important in arriving at its decision and the record also reflects the court's consideration of factors raised by Hernandez in support of a downward variance from the guideline range. Hernandez's argument that the district court considered the guidelines to be mandatory, rather than advisory, is simply inaccurate and the record in the case establishes the procedural reasonableness of the sentence. Hernandez's argument is, therefore, without merit.

## CONCLUSION

For these reasons, we **AFFIRM** the conviction and sentence of the district court.