**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0026n.06

**No 07-6401**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 14, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LOUIS RAY, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: BATCHELDER and SUTTON, Circuit Judges; WISEMAN, District Judge.[*]

SUTTON, Circuit Judge.  Louis Ray challenges the district court's denial of his motion to suppress evidence, arguing that law enforcement officers violated the Fourth Amendment when they arrested him in a motel room without a warrant.  Because the district court found that Ray consented to the officers' entry and because Ray offers no convincing reason for second guessing this fact-intensive and credibility-laden finding on appeal, we affirm.

I.

On the morning of September 15, 2005, a six-foot, 170-pound man held up a Memphis, Tennessee bank.  With a black nylon skull cap, or "du-rag," pulled over his face as a mask, the

---

[*]The Honorable Thomas A. Wiseman, United States Senior District Judge for the Middle District of Tennessee, sitting by designation.

assailant displayed a gun and fled the scene on foot with $23,000 and a red dye pack that marked the cash as stolen.

Eight days later, Detective Paul Sherman of the Memphis Police Department received a phone call from a confidential informant who had supplied him with many reliable tips in the past. A man named Louis, the informant said, had told him that he robbed the bank. The informant told Sherman that Louis was staying at the Rose Motel in Memphis.

Sherman drove to the motel. He made several calls while sitting in the parking lot, verifying that a bank robbery had occurred and advising other officers of the tip. Sherman also confirmed with a motel employee that the room identified by the informant was occupied.

After other officers arrived at the motel, Sherman went to the motel room. Unarmed and dressed in plain clothes, he knocked on the motel room door. Two other officers, also in plain clothes, stood on either side of him.

Louis Ray answered the door. He fit the description of the assailant and wore a du-rag similar to the one worn and discarded during the robbery—an item that, according to Sherman, is often sold in packs. Sherman identified himself as a police officer, showed his badge and identification and asked if he could come inside. Ray, according to Sherman, agreed. Sherman entered the room and the other officers followed shortly thereafter. The officers arrested Ray and searched him, finding dye-stained cash in his sock and on the adjacent bed. After the officers

advised Ray of his Miranda rights and after Ray waived them in writing, Ray confessed to the robbery.

A grand jury indicted Ray for bank robbery and using a firearm during a crime of violence. *See* 18 U.S.C. § 2113(a); *id.* § 924(c). Ray pleaded not guilty and moved unsuccessfully to suppress the evidence seized during the search incident to his arrest. Ray entered a conditional plea agreement, preserving for appeal the district court's denial of his motion to suppress.

## II.

Ray does not contest the district court's finding that the officers had probable cause to arrest him. He argues instead that the officers illegally entered his motel room without consent, tainting the arrest and subsequent search. Just as the Fourth Amendment generally prohibits the police from making an unauthorized entry into a person's home without a warrant, it also generally prohibits warrantless entries into a person's motel room absent consent. *See Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *Hoffa v. United States*, 385 U.S. 293, 301 (1966). As in the context of the home, however, so too with a motel room: The individual may consent to the entry. Thus, when a motel room occupant consents to the entry and the subsequent arrest is supported by probable cause, no Fourth Amendment violation occurs. *See Rodriguez*, 497 U.S. at 181; *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). Ray's key problem here is that the district court found as a matter of fact that Ray consented to the officers' entry, a finding we will not reverse unless it is clearly erroneous. *United States v. Calhoun*, 49 F.3d 231, 234 (6th Cir. 1995).

No clear error occurred. The district court found, based in part on the testimony of Detective Sherman, that none of the officers were pointing (or even holding) a gun when Ray allowed them to come inside. The testimony of FBI Agent William Kay, who observed the encounter from the parking lot 30–40 feet away, denied seeing "any kind of forced entry . . . [or] violent confrontation," Supp. Hr'g I, 8–9, and did not recall anyone having their weapons drawn. The officers' actions leading up to the encounter also suggest that they took steps to ensure that the environment would not be coercive. Instead of allowing Agent Kay and another officer, who wore shirts identifying them as law enforcement officers, to come to the door, Sherman had them wait in the parking lot until he obtained Ray's consent. Sherman "wasn't trying to show . . . force," he explained, when he knocked on the door. Supp. Hr'g I, 63.

Ray offers a different version of the encounter. Any consent he gave at the door, Ray says, "could not have been valid" because he was "confront[ed]" with "at least three officers . . . two of whom had their weapons drawn[] when he was asked for consent." Ray Br. at 22. But the only testimony that supports Ray's story is his own and that of his then-girlfriend Tameka Brooks (who was also in the motel room at the time)—both of which the district court found lacked credibility. In light of the "substantial deference" we afford to the district court's credibility determinations, *United States v. Aloi*, 9 F.3d 438, 440 (6th Cir. 1993), we cannot say that the district court's decision to credit the officers' testimony rather than the defendant's and his girlfriend's was clearly erroneous. *See United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007).

Ray persists that the "imperfect recollections" of Sherman and Kay, who both testified that they did not "remember" any officers having their guns drawn, are no match for Tameka Brooks' "unequivocal statement" that the officers had their guns drawn at the door. Ray Br. at 24–25. But Ray's attempt to punch holes in the officers' testimony does not satisfy Ray's burden of proving clear error or otherwise overcome the credibility problems the court identified with Brooks' testimony: her romantic relationship with Ray and her desire not "to see him get into trouble," Supp. Hr'g II, 54. *See Harrison v. Monumental Life Ins. Co.*, 333 F.3d 717, 722 (6th Cir. 2003) (appellant contesting district court's factual findings cannot show clear error "merely by demonstrating a conflict in the testimony nor by seeking to redetermine the credibility of witnesses" (internal citations omitted)). The district court acknowledged the "faint possibility" that "someone might have drawn a gun" and rejected it in light of its decision to credit the officers' testimony. Supp. Hr'g II, 51. And because the "district court's account of the evidence is plausible in light of the record viewed in its entirety . . . [t]he district court's choice between two permissible views of the evidence cannot . . . be clearly erroneous." *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir. 1999).

### III.

For these reasons, we affirm the district court's denial of the motion to suppress.