**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0424n.06

**No. 07-5484**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| TERRY WAYNE COPE, | ) | **FILED** |
|  | ) | **Jul 13, 2010** |
| Petitioner-Appellant, | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| UNITED STATES OF AMERICA, | ) | EASTERN DISTRICT OF KENTUCKY |
|  | ) |  |
| Respondent-Appellee. | ) |  |

Before: DAUGHTREY, GILMAN, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. A federal jury convicted Terry Cope of nine counts of attempted murder and firearm violations, and our court affirmed. *See United States v. Cope*, 312 F.3d 757 (6th Cir. 2002). Cope filed a collateral challenge to his conviction, *see* 28 U.S.C. § 2255, claiming that his counsel's performance was constitutionally deficient. The district court held an evidentiary hearing, then denied the petition. In view of the district court's credibility findings and in view of the reasonable investigative decisions made by Cope's attorney, we affirm.

I.

A jury convicted Cope and his brother, Randall Cope, on a variety of charges, including the attempted murders of Terry Cope's ex-wife and her husband, the attempted murder of Sarah Jackson (Randall Cope's ex-girlfriend), the arranged murder-for-hire of Jackson and several related firearms

offenses. Just one of these convictions—the attempted murder of Jackson—bears on this appeal, so we will focus on that one.

In a separate trial against Randall Cope for internet harassment and credit card fraud, the government identified Jackson as one of its key witnesses. *See Cope*, 312 F.3d at 765–66. Ten days before she planned to testify, someone fired multiple gunshots at a car in which Jackson and her teenage son were sitting near Jackson's home in Florence, Kentucky. *See id.*at 766. Although no one saw the shooter, the investigation soon focused on Terry and Randall Cope. *See id*. Just over four hours after the shooting, Terry Cope's ex-wife saw him in Hendersonville, Tennessee, which is approximately four hours away from the site of the shooting in Florence, Kentucky. *Cope v. United States*, No. 04-207-JBC, 2007 WL 4771137, at *4 (E.D. Ky. Feb. 7, 2007). A gun found in Terry Cope's yard, as well as three guns owned by his father to which he had access, had rifling characteristics that matched the bullets found in Jackson's car. And when Terry Cope met with an undercover agent posing as a hit man to arrange for Jackson's murder, Cope told the agent that Jackson's car was full of bullets, confirming his knowledge of the prior attempt on Jackson's life. *See Cope*, 312 F.3d at 769.

The district court appointed Steven Howe to represent Cope. It did so after the grand jury indicted Cope for the attempted murder of his ex-wife and her husband, the arranged murder for hire of Sarah Jackson and the related firearms offenses, but before the grand jury indicted him for the attempted murder of Jackson. After Howe's appointment, and at Cope's urging, Howe spoke to Julia Woods, Cope's fiancee at the time of the crimes. *Cope*, 2007 WL 471137, at *4. According to

Howe, neither she nor Cope mentioned that they were together on the day of the Jackson shooting. *See id.* at *6. After the grand jury indicted Cope for attempting to murder Jackson, the prosecutors interviewed Woods. They too concluded that Woods was not a witness, because she told them that she had not spoken with Cope on the day of the Jackson shooting until later in the evening. The prosecution contacted Woods a second time, and she insisted she had already told them everything she knew. The prosecution shared this information with Howe.

A jury convicted Cope of the attempted murder of Sarah Jackson (and eight other counts), and the court sentenced him to 502 months of imprisonment. A panel of this court affirmed the conviction and sentence. *See Cope*, 312 F.3d at 769.

Five years after the trial, Cope challenged his conviction under § 2255, relying on an alibi supported by Julia Woods. Woods claims that her initial statements to Howe and the prosecutors were either incomplete or incorrect. She now believes that Cope took her to work the morning of the Jackson shooting, which supplies the following alibi: Because Woods would have gone to work three hours after the attempted murder (which happened roughly four hours away), Cope could not have fired the shots at Jackson *and* taken Woods to work.

This new evidence, Cope submits, shows that his counsel failed to investigate Woods thoroughly as an alibi witness. His counsel also fell short, he adds, by failing to investigate the condition of the car Cope drove on the day of the attempted murder, the weather conditions on the day of the attempted murder and other details related to Cope's alibi. The district court rejected each

theory, *see Cope*, 2007 WL 471137, though it granted Cope a certificate of appealability on this claim.

II.

To prevail on an ineffective-assistance claim, Cope must show that his attorney's performance was unreasonable under prevailing professional norms and that his failings so infected the proceedings as to make the trial unfair and the verdict unreliable. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009). Counsel's failure to investigate a defense may constitute ineffective assistance, *see Rompilla v. Beard*, 545 U.S. 374, 387 (2005), particularly when an attorney fails to investigate a plausible alibi defense, *see Bigelow*, 576 F.3d at 287–88.

Howe's assistance did not fall short of these requirements. Cope, to start, has a believability problem. The key premises of Cope's theory of ineffective assistance turn on his former fiancee's (Woods') account of the extent of Howe's investigation, which conflicts with testimony by Howe and others about what Woods said at the time and about what Howe investigated at the time. After listening to and observing all three individuals—Howe, Cope and Woods—testify at an evidentiary hearing, the district court found Howe's testimony credible and Woods' and Cope's contrary testimony unbelievable. *Cope*, 2007 WL 471137, at *6. That creates a serious problem for Cope, as we generally will not second-guess the credibility findings of the judge who heard the witnesses'

testimony, *see United States v. Aloi*, 9 F.3d 438, 440 (6th Cir. 1993), and we have identified no cognizable basis for altering those findings here.

Second, the evidentiary record, as credited by the district court, shows that Howe reasonably investigated this alibi defense. The parties do not dispute that, at Cope's request, Howe spoke with Woods soon after Cope was indicted and determined that Woods was not a witness to any relevant events. *See Cope*, 2007 WL 471137, at *6. Although Cope had not yet been charged with attempting to murder Sarah Jackson at the time of this conversation, he had been charged with a closely related crime: hiring someone to murder Jackson. The district court credited Howe's testimony that he informed Woods about the Jackson shooting during this conversation, and that she nonetheless persisted in her claim that she had nothing to offer in Cope's defense. *Id.*

Nothing changed Howe's initial impression that Woods was not a witness. Later events indeed confirmed it. Howe received notice from the prosecutors that Woods also told them that she could not provide Cope with an alibi for the day of the attempted murder. Woods later reiterated to the government that she had told them everything she knew. And Cope told Howe that he did not have any alibi witnesses for the attempted murder. *Cope*, 2007 WL 471137, at * 16. Woods' first conversation with Howe and her later conversations with the prosecutors gave Howe "good reason to think further investigation would be a waste," *Rompilla*, 545 U.S. at 383, and that there was nothing left to investigate.

No doubt, had the district court credited Woods' and Cope's story that Howe *never* spoke to Woods about the Jackson shooting, even after Cope pleaded with him to talk to her, that would be a different matter. But the district court not only had a ring-side opportunity to size up the credibility of the competing witnesses' accounts first hand, *see Aloi*, 9 F.3d at 440, it also had a powerful reason to doubt Woods' story: Memories generally do not sharpen as time goes by, particularly when five years pass between the first story and the second one. Woods now claims to remember with clarity the events of the day of the shooting because she has recently spoken with an investigator for Cope's current attorney and because she reviewed her calendar from that time. Yet Woods' calendar entry for the day of the attempted murder hardly appears to create a crystalizing prompt. It merely says "Re/Max," which is one of the places where Woods worked, and it contains no reference to Cope.

Nor can we fault Howe for not investigating the litany of other alibi-related facts that Cope now presents to us. Roughly four hours after the shooting, Cope's ex-wife, not to be confused with his ex-fiancee (Woods), saw him in Hendersonville, Tennessee—four hours from Jackson's home in Florence, Kentucky. *Cope*, 2007 WL 4771137, at *4. Cope maintains that Howe should have corroborated his alibi by searching for evidence about the difficult driving conditions the day of the attempted murder and about his car's mechanical problems that would have prevented him from driving from Florence, Kentucky, to Hendersonville, Tennessee, in just four hours. But the district court found that Cope did not mention any of these facts to Howe, *see id.* at *8, and Cope offers no tenable basis for upsetting that finding. By staying silent, Cope gave Howe no reason to look into

these (potentially) exculpating facts. Cope and Woods also did not put the Woods alibi on Howe's radar, so, without some objectively credible evidence to support an alibi defense, we cannot fault Howe for choosing not to pursue additional alibi investigations. *Cf. Bigelow*, 576 F.3d at 287–88. An attorney does not provide deficient counsel by making investigative decisions "based, quite properly . . . on information supplied by the defendant." *Strickland*, 466 U.S. at 691.

At least some of the evidence Cope wanted Howe to discover—the faulty condition of Woods' car, which he drove on the day of the Jackson shooting—also is in tension with the story Cope presented at trial. Cope claims that the night before the attempted murder, he visited his properties in Jackson, Tennessee, over two hours from where Cope and Woods resided. But if the car was in such questionable condition, why would he have taken it on such a long drive? Viewed in light of the "heavy measure of deference" we owe to defense counsel's judgments, *Strickland*, 466 U.S. at 691, and the district court's credibility determinations, we cannot say that Howe's failure to pursue these lines of investigation fell below objectively reasonable professional standards.

III.

For these reasons, we affirm.